580 So.2d 648 (1991)
DEPARTMENT OF AGRICULTURE AND CONSUMER SERVICES, Appellant,
v.
Marjorie SCHICK, Robert Schick, Buck Hull and Dot Hull Shaw, Appellees.
No. 90-1921.
District Court of Appeal of Florida, First District.
April 29, 1991.
*649 Clinton H. Coulter, Jr., Tallahassee, for appellant.
Randall E. Denker, of Lehrman & Denker, Tallahassee, for appellees.
ERVIN, Judge.
Appellant, the Department of Agriculture and Consumer Services (Department), seeks review of the lower court's order directing it to pay attorney's fees to appellees, Robert and Marjorie Schick, Buck Hull, and Dot Hull Shaw, in an inverse condemnation action. Appellant specifically complains of the trial court's use and application of a Rowe[1] risk multiplier. Appellees have also cross-appealed regarding proper application of the risk multiplier. We reverse as to the issue raised in appellant's appeal, which renders moot our consideration of the cross-appeal, and remand for further proceedings.
This is the fourth appearance for these parties before this court. This appeal pertains to the proceedings that occurred following our remand in Department of Agriculture and Consumer Services v. Schick, 553 So.2d 361 (Fla. 1st DCA 1989) (Schick III), in which we held that the trial court erred in awarding attorney's fees that included a Rowe risk multiplier without making specific findings to support the application of the multiplier. Id. at 362. Although the Department additionally argued that the trial court erred in even applying a contingency risk multiplier to the fees awarded under Chapter 73, Florida Statutes, this court apparently rejected that argument, stating:
On remand, the trial court may determine that a contingency risk factor should be applied in the award of attorney fees in this case even though the fees are awarded pursuant to a statute. Frequently a fee awardable pursuant to section 73.091 would not appropriately include a contingency risk factor. However, under certain circumstances, such as perhaps in the instant case where entitlement to a fee under 73.091 did not vest until appellees overcame the hurdle of showing inverse condemnation, application of a contingency risk factor can be upheld if adequate reasons for such an award are set forth.
Id. at 362 (citation omitted). Pursuant to our directive, the trial court entered a final order awarding appellees attorney's fees pursuant to Section 73.091, Florida Statutes (1987). The fees awarded were calculated by applying two risk multipliers to *650 the hours expended in various stages of the proceedings.
Ordinarily we would apply the law of the case to an issue previously decided by this court which was later raised in a subsequent appeal; however, shortly following our decision in Schick III, the Florida Supreme Court issued its opinion in Standard Guaranty Insurance Co. v. Quanstrom, 555 So.2d 828 (Fla. 1990), which limited the application of risk multipliers when determining reasonable attorney's fees in eminent domain proceedings. In so doing, the court reiterated that the Rowe lodestar approach, with its contingency risk factors, was inapplicable to fee awards in which a statute sets out specific criteria to be considered in awarding fees. Id. at 834. See also What An Idea, Inc. v. Sitko, 505 So.2d 497, 498 (Fla. 1st DCA) (Rowe lodestar approach inapplicable to attorney fee awards under workers' compensation act, because section 440.34 sets forth specific factors that must be considered in assessing such awards), review denied, 513 So.2d 1064 (Fla. 1987). Moreover, the court in Quanstrom, although not explicitly precluding the use of a contingency multiplier in eminent domain proceedings, indicated that "[u]nder ordinary circumstances, a contingency fee multiplier is not justified in ... [such cases]." Quanstrom, 555 So.2d at 835.
Based upon our reading of Quanstrom, we now consider that our directive in Schick III to the lower court regarding the application of the contingency risk multiplier was incorrect. Although appellees urge us to abide by the "law of the case," we decline to do so. In so doing, we are mindful of the following language in Strazzulla v. Hendrick, 177 So.2d 1, 4 (Fla. 1965):
[A]n appellate court should reconsider a point of law previously decided on a former appeal only as a matter of grace, and not as a matter of right; and that an exception to the general rule binding the parties to "the law of the case" at retrial and at all subsequent proceedings should not be made except in unusual circumstances and for the most cogent reasons  and always, of course, only where "manifest injustice" will result from a strict and rigid adherence to the rule.
An example of such an exceptional circumstance is when a higher court issues an intervening decision contrary to a decision a lower court reached in a former appeal, and correction of the error would make an appeal to a higher court unnecessary. Id. The present case in our judgment fits squarely into that exception, and, because manifest injustice to the state would result if section 73.092 is erroneously interpreted to include the use of a multiplier in determining attorney fee awards, we consider it is our responsibility to reject strict adherence to the law of the case and revisit the issue. See also Brunner Enters. v. Department of Revenue, 452 So.2d 550 (Fla. 1984); Escambia County Council on Aging v. Goldsmith, 500 So.2d 626 (Fla. 1st DCA 1986). Cf. Department of Health & Rehab. Servs. v. Shatto, 538 So.2d 938 (Fla. 1st DCA), review denied, 549 So.2d 1013 (Fla. 1989).
In reaching our conclusion that the law of the case should not control the outcome of the issue now on appeal, we are also aware that statutes authorizing the assessment of fees against the non-prevailing party have traditionally been strictly construed on the ground that they are in derogation of common law. Kittel v. Kittel, 210 So.2d 1, 3 (Fla. 1967) (on rehearing); 12 Fla.Jur.2d Costs § 33, at 177 (1979). We are therefore of the view that if a statute exists, as here, in which the legislature has set forth specific criteria that must be considered by a tribunal when deciding a reasonable award of an attorney's fee, that specific statute controls  not Rowe  and if the statute does not contemplate the use of additional factors, such as multipliers, then those factors cannot be considered in determining the award.
The applicable statute at bar, section 73.092, lists six specific criteria that must be considered when assessing fees. Those six factors do not include consideration of the contingent or fixed nature of a fee arrangement between the client and his attorney. It appears, therefore, that any *651 such consideration is irrelevant when determining an award under sections 73.091 and .092. Consequently, we conclude that the trial court erred in applying a contingency risk multiplier in the instant case. The award entered, therefore, must be reversed and the case remanded to the lower court with directions that it determine the attorney's fee award based solely on the factors set forth under section 73.092.
In so holding, we acknowledge, as previously noted, that Quanstrom does not absolutely bar the use of a risk multiplier in eminent domain proceedings; rather the opinion states that under "ordinary circumstances" one would not be justified. Quanstrom, 555 So.2d at 835. It would seem from our reading of Quanstrom, however, that any unusual circumstance justifying the application of a risk multiplier would pertain only to the six factors specified under section 73.092.
Nevertheless, because we are unsure whether the court in Quanstrom intended to preclude the application of a contingency risk multiplier to a taking issue that was highly uncertain, which is clearly apparent at bar, we consider it useful to certify the question, stated infra, to the Florida Supreme Court as one of great public importance. This was no ordinary case; it concerned novel and unique issues; it was a case of first impression regarding whether a landowner could recover damages under a theory of inverse condemnation as a result of the Department's pollution of underground waters beneath appellant's property. It required three appeals to this court, as well as certiorari proceedings to the supreme court, before a taking was found. Moreover, we observe that the court stated in Quanstrom, "[I]n eminent domain cases, the purpose of the award of attorney's fees is to assure that the property owner is made whole when the condemning authority takes the owner's property." Id. Obviously, a property owner will not be made whole if the cost of litigating the threshold issue of a taking is excluded from consideration in assessing a reasonable fee following a successful determination that a taking had occurred in an inverse condemnation claim.
Our uncertainty in this regard is further compounded by the fact that pre-Quanstrom case law indicates that factors other than those specified in the fee-authorizing statute may be considered in determining the reasonableness of a fee in an inverse condemnation action. For example, in Department of Natural Resources v. Gables-By-The-Sea, Inc., 374 So.2d 582 (Fla. 3d DCA 1979), cert. denied, 383 So.2d 1203 (Fla. 1980), the Third District not only applied the factors set forth in section 73.092, but considered as well Canon 2 of the Professional Code of Responsibility, which authorizes consideration of the contingent nature of the fee arrangement.
For all the above reasons, we certify the following question to the supreme court as one of great public importance:
IN DETERMINING THE REASONABLENESS OF AN ATTORNEY'S FEE AWARD MADE PURSUANT TO THE PROVISIONS OF SECTION 73.092, FLORIDA STATUTES, IS THE ROWE CONTINGENCY RISK MULTIPLIER APPLICABLE IN AN INVERSE CONDEMNATION ACTION, BASED UPON A RECORD IN WHICH IT IS CLEARLY APPARENT THAT IT WAS INITIALLY HIGHLY UNCERTAIN WHETHER THE CLAIMANTS WOULD PREVAIL ON THE THRESHOLD ISSUE OF A TAKING?
The award of attorney's fees is REVERSED and the case is REMANDED with directions to enter an order in compliance with this opinion.
ALLEN, J., concurs.
WOLF, J., dissents with written opinion.
WOLF, Judge, dissenting.
I must respectfully dissent from the well-written opinion of the majority for three reasons. I believe (1) there are insufficient reasons to justify a deviation from the law of the case previously set out in Department of Agriculture and Consumer Services v. Schick, 553 So.2d 361 (Fla. 1st *652 DCA 1989) (Schick III); (2) the statement in Standard Guaranty Ass'n Ins. Co. v. Quanstrom, 555 So.2d 828 (Fla. 1990), that "[u]nder ordinary circumstances, a contingency fee multiplier is not justified" in eminent domain cases, is not applicable to inverse condemnation proceedings; and (3) even if the statement in Quanstrom is determined to be applicable to inverse condemnation proceedings, the trial judge in the instant case made factual findings which would justify application of the risk factors.
The primary reason that the majority gives for deviating from the law of the case in Schick III is that our supreme court "has issued a decision contrary to" the previous decision of this court, and manifest injustice would result in not applying Quanstrom to this case. I disagree. The decision in Quanstrom is not contrary to the result reached in Schick III. This court in Schick III specifically recognized that
[f]requently, a fee awardable pursuant to section 73.091 [the eminent domain fee statute] would not appropriately include a contingency risk factor. However, under certain circumstances, such as perhaps in the instant case where entitlement to a fee under 73.091 did not vest until appellees overcame the hurdle of showing inverse condemnation, application of a contingency risk factor can be upheld if adequate reasons for such an award are set forth.
Id. at 362 (emphasis added). This holding in no way deviates from Quanstrom, which states that in eminent domain cases "under ordinary circumstances," the application of contingency risk factors are inappropriate. Quanstrom, supra, at 835. Both the supreme court and this court recognized that in normal eminent domain cases the application of a risk factor would be inappropriate.
One of the reasons the supreme court felt that the risk multiplier was inappropriate in typical eminent domain cases was that "[i]n these cases, the attorney is assured of a fee when the action commences." Quanstrom, supra, at 835. The supreme court recently explained, "This [contingency] factor was created to compensate attorneys for those cases where there is a risk of nonpayment. In other words, this factor was added to the lodestar formula to compensate attorneys who receive no fee if they do not prevail." In re: Estate of Platt, 16 F.L.W. S237, S240 (Fla. April 4, 1991) (footnote omitted). As this court recognized in Schick III, the award of attorney's fees is not assured in inverse condemnation actions, and thus, these cases do not involve the ordinary circumstances associated with an eminent domain action.
In addition, on remand of Schick III, the trial court found as follows:
2) The court finds that this case raised several novel and very unique issues of law. This case raised the question of whether a landowner could recover under a theory of inverse condemnation as a result of pollution in underground waters. This was a case of first impression in Florida. The appellate court in Schick v. Department of Agriculture, 504 So.2d 1318 (Fla. 1st DCA 1987) recognized the uniqueness of the central issue raised in this case, as well. In fact, this court originally dismissed the inverse condemnation suit for "failing to state a cause of action." The only other Florida case dealing with the issue of inverse condemnation based on pollution of underground waters was Village of Tequesta v. Jupiter Inlet Corporation, 371 So.2d 663 (Fla.), cert. den. 444 U.S. 965, 371 [100] S.Ct. 453, 62 L.Ed.2d 377 [(1979)] and that case was decided against the landowners. Therefore, this court is of the opinion that this case carried with it a high degree of risk for the attorney at the outset.
3) Unlike the typical condemnation case filed pursuant to Ch. 73, where the attorney is compensated regardless of the outcome, this case was an all-or-nothing case. The attorney testified that she had no other fee arrangements with her clients and that if she failed to prevail, she would recover nothing for her many years of legal service. Because of the uniqueness and complexity of the case, *653 the attorney assumed a very substantial risk of nonpayment. Case law, at the time she undertook to represent these clients, was either non-existent or against her. The landowners' attorney was not on a contingency fee with her clients nor was she working on an hourly rate basis.
4) This case was legally and procedurally complicated. Although the case was filed in 1985, Plaintiffs' attorney has been representing these landowners since 1984. At the time this court entered its order on attorney's fees, there has been two appeals to the DCA (there have since been two more), a certiorari appeal to the Supreme Court, an attempted removal to federal court, a hearing on liability and a hearing on damages. Because of the uniqueness and complexity of the issues raised, the amounts of damages involved and the number of clients represented, it was a significant gamble on the part of the attorney from the outset. It was also apparent, at the outset, that the litigation would be lengthy and time-consuming. The condemnees' attorney testified that often she spent whole days only working on this case and that she was forced to turn down paying cases at one time because the instant litigation had become so time-consuming.
The clients would not have had the resources to hire an attorney at an hourly rate. If they had been on a contingency fee, they would not have received the full compensation for their land guaranteed to them by the Constitution. Without a substantial risk multiplier as an incentive, it is doubtful that these landowners could have attracted an attorney, particularly one with a high level of specialization in environmental law, to represent them on this matter. In fact, the evidence shows that (even with the statutory guarantee of attorney's fees under Chapter 73, Florida Statutes), these same landowners spent a great deal of time trying to find a knowledgeable attorney who was willing to help them. It is known that at least two attorneys passed over the case prior to their obtaining the services of their current attorney.
I believe that these findings are supported by competent substantial evidence and comply with the previous mandate of this court in Schick III and the requirement of Quanstrom, as explained in Platt, for elucidation of adequate reasons which justify application of a contingency risk factor to a fee award pursuant to section 73.091, Florida Statutes (1987). I would, therefore, uphold the decision of the trial court in this matter.
NOTES
[1] Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985).