632 So.2d 615 (1994)
HIGLEY SOUTH, INC., a Florida Corporation and Reliance Construction Company, a Florida Corporation, D/B/a Higley-Reliance, a Joint Venture and the Federal Insurance Company, a Foreign Corporation, Appellants,
v.
QUALITY ENGINEERED INSTALLATION INC., a Florida Corporation, Appellee.
No. 92-00142.
District Court of Appeal of Florida, Second District.
January 5, 1994.
Rehearing Denied February 23, 1994.
*617 Hala Sandridge of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, for appellants.
Kevin A. McLean of McLean & Schecht, P.A., Tampa, for appellee.
RYDER, Judge.
We have for review seven issues raised by Higley South, Inc., Reliance Construction Company (Higley) and Federal Insurance Company concerning an award of attorney's fees to Quality Engineered Installation (Quality). We affirm in part, reverse in part, and remand to the trial court to redetermine the amount of Quality's attorney's fees in accordance with this opinion.
Higley was the contractor for the condominium project known as the Promenade. The owner of the project was Park Shore Development Co., Inc. One of the subcontractors on the job was appellee, Quality. Quality was responsible for the installation of the windows at the Promenade. Ultimately, the owner terminated the contractor, as well as the subcontractor, from the project. The owner completed its project with another general contractor.
At the time Quality was terminated from the project, it was owed approximately $160,000.00-$17p,000.00 for the work completed with its agreement with Higley. Quality retained the services of an attorney, Louis Stolba, to sue Higley for this amount. A lawsuit was filed by Quality against Higley and Higley's surety, Federal Insurance Company. Higley and the surety then moved to compel arbitration. Arbitration was ordered by the trial court. Appellants subsequently requested consolidation of all the arbitration proceedings involving the project. Stolba's firm, representing Quality, moved to dismiss the complaint seeking consolidation. The trial court granted Quality's motion to dismiss the complaint and Higley and the surety appealed to this court. Stolba appeared on behalf of Quality.`The case was reversed on appeal and remanded to the trial court for further proceedings on the issue of consolidation. Higley-South, Inc. v. Park Shore Development Co., Inc., 494 So.2d 227 (Fla. 2d DCA 1986). No order was entered by this court awarding Stolba attorney's fees for this losing appeal. On remand, the lower court consolidated all of the arbitration proceedings.
Shortly thereafter, Higley and Quality, including their respective sureties, entered into a corporation agreement. Pursuant to this agreement, appellants advanced to Quality the sum of $100,000.00 "to be applied in partial satisfaction of the claims raised by" Quality against Higley. Quality used this payment to satisfy a portion of its debt to Stolba for outstanding legal services owed by Quality to Stolba's firm. After receiving the payment, Stolba withdrew from further representation of Quality in the claim set for arbitration because Quality could no longer pay his bills. Stolba did not continue to represent Quality on a contingency basis because, in his professional opinion, the risk was too high.
Quality then began a search for a new attorney to represent it in the arbitration. Initially, Quality retained an attorney, David Ross, to review the file to determine whether he would represent Quality. Ross rejected representation of Quality because Quality could not pay his bills. Ross testified that he would not take this case on a contingency basis because he was not optimistic as to the chance of success, partly because of claims against Quality arising out of the project for one to two million dollars. He was also not in a position to become involved in a nine-to-twelve-week arbitration.
Around the first day of arbitration, Quality retained new counsel to represent it; Leon Williamson, Neil Schecht and Kevin McLean. The attorneys were retained by Quality around May 24, 1988. At that time, no written agreement concerning payment of fees was signed. There was a verbal agreement *618 that Williamson, Schecht and McLean would represent Quality on a contingency fee basis for 35% of any recovery received. This was reduced to writing on October 11, 1988.
Quality was bonded by Reliance Insurance Company; Mr. Jurado was a guarantor on the bond. Mr. Jurado agreed to pay McLean and Schecht an hourly rate to defend the claims against Quality covered by the bond. Williamson was not paid on an hourly basis, apparently because he was in-house counsel for Mr. Jurado's company. McLean and Schecht received a combined total of approximately $26,000.00 from Mr. Jurado for their defense of these claims. The $26,000.00 represented only a portion of the total hours expended by McLean and Schecht in representing Quality in the arbitration at a reduced hourly rate of $80.00 per hour for McLean and $50.00 per hour for Schecht. There existed no written requirement that Quality's attorneys return this $26,000.00 payment to Jurado. Quality had no knowledge of the arrangement between McLean and Schecht and Jurado.
At arbitration, Quality's counsel accepted the opportunity presented by the arbitrators, and by agreement of all counsel, to only be present at the arbitration when issues concerning Quality's work was being discussed, and when necessary to present Quality's claim. Counsel for another contractor recalled McLean's presence at the arbitration approximately 10 to 15% of the time. McLean's daily calendar for the months of the arbitration revealed that he intended on his calendar to be present only seven days out of the four-month period of the arbitration. However, Quality's president, Mr. Aschi, attended the hearings and discussed the day's testimony and exhibits with Quality's attorneys every day after the hearings.
Ultimately, an award was rendered which, among other things, awarded Quality approximately $83,000.00. This amount included prejudgment interest and equaled the $60,000.00-$70,000.00 amount which Quality believed was owed on the contract. The arbitrators also awarded Quality attorney's fees as follows: "[r]eimbursement of reasonable legal fees for legal services necessary to prepare and present the Quality Engineered Installation, Inc.'s claim."
Thereafter, Quality moved to confirm the arbitration award and requested the trial court to award fees "for which entitlement was given by the arbitration award." In further proceedings before the trial court, the court refused to award fees to Quality because, at that time, the prevailing law in this district did not permit an award of fees for time spent in arbitration. Quality, as well as the other claimants in the arbitration, appealed the trial court's decision to this court. Prior to a rendition of the order in that appeal, we decided Fewox v. McMerit Construction Co., 556 So.2d 419 (Fla. 2d DCA 1989) (en banc), approved sub. nom., Insurance Company of North America v. Acousti Engineering Co. of Florida, 579 So.2d 77 (Fla. 1991). In Fewox, we reversed our previous position which prohibited attorney's fees for time spent in arbitration. In light of our change in position, we also held, in Quality's appeal, that fees were available for time spent in arbitration. Because of conflict with other districts, we certified this matter to the Florida Supreme Court. The supreme court upheld our decision in Fewox. Acousti, 579 So.2d 77. Both this court and the supreme court granted Quality's motions for attorney's fees in these two appeals.
The case then proceeded to the trial court for a determination as to the amount of fees to which Quality was entitled. At the hearing, testimony was presented by all parties as to what would be a reasonable fee. After receiving this evidence, the lower court rendered an award of fees to Stolba, Ross, McLean, Schecht and Williamson in a total amount of $319,000.00. The trial court did not limit the award to time spent preparing and presenting the arbitration claim. The award included any time spent by any attorney representing Quality including the time for the losing appeal involving the consolidation of all of the arbitrations. A multiplier of 2.0 was applied to the lodestar of McLean, Schecht and Williamson. The award also included fees incurred for time spent litigating the fee claim. The lower court also awarded costs incurred litigating the fee claim and prejudgment interest on the underlying *619 amount in the entire judgment amount. This timely appeal followed.
In appellants' first issue, they claim that the trial court was limited in its fee award by the language in the arbitration award purporting to award attorney's fees limited to "fees for legal services necessary to prepare and present [Quality's] claim." However, arbitrators have no authority to award attorney's fees. "The proper place to determine the entitlement to and amount of attorney's fees authorized by contract or statute is in the circuit court upon application for confirmation of the [arbitrator's] award." Fewox, 556 So.2d at 422. See also Fridman v. Citicorp Real Estate, Inc., 596 So.2d 1128 (Fla. 2d DCA 1992) ("the circuit court and not the arbitrators must determine the fee"). We reject appellants' argument that because the arbitrators were present during the arbitration proceedings their "direction" or limiting language in fee awards should be binding on the trial courts which subsequently determine the amount of the fee award. We have held and continue to hold that it is the trial court which determines both entitlement to and amount of attorney's fees. Accordingly, the arbitration award did not limit the trial court's award of fees.
Appellants' second issue involves the attorney's fees awarded for attorney Stolba's representation of Quality in the appeal concerning the consolidation of the arbitration proceedings. In that case, we held in Higley's favor and against Stolba and Quality. Higley-South, 494 So.2d 227. Stolba did not file a motion for attorney's fees in that appeal and hence, no such fees were granted. "[T]he trial court may not award appellate attorneys' fees absent a mandate from the appellate court." Real Estate Apartments, Ltd. v. Bayshore Garden Apartments, Ltd., 530 So.2d 977 (Fla. 2d DCA 1988). See also Howell v. Howell, 183 So.2d 261 (Fla. 2d DCA 1966) ("[t]he first appeal and the certiorari taken thereon have been concluded and no attorney's fees having been fixed by the Court of Appeal or the Supreme Court, the right to attorney's fees in those proceedings has been terminated"). The trial court, in this case, erred in awarding Quality attorney's fees for Stolba's work on the consolidation appeal.
The trial court arrived at the number of hours expended and reasonable hourly rate for Mr. Stolba primarily by Mr. Aschi's testimony that Quality had paid Stolba $32,000.00 in fees prior to his termination as Quality's attorney, and Mr. Stolba's testimony that approximately $5,800.00 was still owed by Quality. An expert, Mr. Phillips, testified that a "very rough" figure for the amount of reasonable fees incurred by Stolba in the appeal in question was $5,000.00 to $6,000.00. Mr. Phillips also testified that he felt that $32,000.00 in addition to the remaining $5,800.00 unpaid was on the high side of "reasonable" for the work Stolba accomplished for Quality. Mr. Phillips believed that, in his opinion, a reasonable amount would be $25,000.00 (200 hours at $125.00/hr.). On remand, the trial court must make a determination as to the amount of time Stolba spent on the consolidation appeal and subtract those hours from the total number of hours found to have been reasonably spent by Stolba in his representation of Quality in this case.
Appellants next argue that the trial court erred in applying a multiplier in this case. The factors a trial court must take into consideration in determining whether a multiplier should be applied in a particular case are: "(1) whether the relevant market requires a contingency fee multiplier to obtain competent counsel; (2) whether the attorney was able to mitigate the risk of nonpayment in any way; and (3) whether any of the factors set forth in [Florida Patients Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985)] are applicable, especially, the amount involved, the results obtained, and the type of fee arrangement between the attorney and his client." Standard Guaranty Insurance Co. v. Quanstrom, 555 So.2d 828, 834 (Fla. 1990).
Both attorneys Stolba and Ross testified that they would not take this case on a contingency basis because the risk was too high. However, attorneys McLean, Schecht and Williamson were able to mitigate the risk of nonpayment by their receipt of $26,000.00 from the bond guarantor, Jurado. The *620 amount involved in this case was known to be between $60,000.00 and $70,000.00. Quality ultimately received a check from Higley for approximately $84,000.00. The attorney's fees pursuant to the contingency fee agreement were approximately $29,000.00. Attorneys McLean, Schecht and Williamson's risk of nonpayment was in an amount of approximately $29,000.00; $26,000.00 of which they were able to mitigate. Quality's argument that the $26,000.00 was more in the nature of a loan is not supported by the record. There is no evidence to support the fact that had Quality been unsuccessful in the arbitration, that its attorneys would have to repay the $26,000.00 to Jurado. Although the trial court found that success was unlikely at the outset of the case, the judge did not take into consideration the extent to which the attorneys were able to mitigate their risk of nonpayment. Taking into account that McLean, Schecht and Williamson were able to mitigate their risk of nonpayment by approximately 90%, we hold that the use of a multiplier was not proper in this case.
Appellants next contend that it was error for the trial court to award fees for time spent litigating the fee claim. We have held that fees for an attorney's work to recover fees are not recoverable when the client does not have an interest in the fee award and when the client is not obligated to the attorney for that work. B & L Motors, Inc. v. Bignotti, 427 So.2d 1070 (Fla. 2d DCA 1983), disapproved on other grounds, Travieso v. Travieso, 474 So.2d 1184 (Fla. 1985); see also U.S. Security Insurance Co. v. Cole, 579 So.2d 153 (Fla. 2d DCA 1991), review denied, 591 So.2d 631 (Fla. 1991).
The question of whether fees for litigating fees are appropriate arises in two separate stages of this proceeding. First, whether Quality may recover its attorney's fees for time expended prosecuting the appeals to this court and the Florida Supreme Court on the issue of a subcontractor's entitlement to fees under sections 627.428 and 627.726 when it prevails in an arbitration. Second, whether Quality's attorneys are entitled to a fee for their time spent litigating the amount of their statutory fees before the trial court.
We address the appellate fees first.[1] Quality's fee agreement with Williamson, Schecht and McLean required Quality to pay 35% of the amount recovered in arbitration, or a court awarded fee, whichever was greater. Once Quality obtained its award in arbitration it became obligated for fees of approximately $29,000.00 under the 35% contingency portion of the fee agreement, and apparently paid its attorneys this amount. But, if the attorneys were successful in obtaining a statutory fee from the surety, they would be required to reimburse Quality for the amounts paid and Quality would benefit in the amount of $29,000.00. We noted in Bignotti that if a statutory fee award would relieve a client from a fee obligation to his attorney, work in obtaining a such statutory award would be a benefit to the client. 427 So.2d at 1074. Because an award of fees under sections 627.428 and 627.756 would relieve Quality of its $29,000.00 obligation, we hold that Quality had an interest in the fee award.
It is somewhat difficult to apply the Bignotti requirement that the client be obligated to its attorneys for the fee litigation to a case where a client promises to pay a lump sum, such as a percentage of the recovery, rather than an hourly rate. At the lower court hearing on the amount of the fees, attorney McLean stated that Quality had no financial obligation for its counsel's efforts in obtaining the fee award. The appellants argue this statement demonstrates that the Bignotti requirements were not met, and that the trial court erred in awarding Quality its attorney's fees for these appeals. We disagree. Quality's fee agreement required its attorneys to "seek attorney's fees for their representation from the arbitration panel and from the appropriate state ... court." If the agreement had not covered compensation for the litigation on the statutory fee issue, Quality's attorney's could have ceased their representation at the time of the arbitration award, *621 when the fee of $29,000.00 became due. Quality could have then retained other counsel, or entered into a new agreement with its existing counsel, to litigate its entitlement to fees from a surety in a successful arbitration. This did not happen. Quality's attorneys continued to act on its behalf in the successful fee appeals. The parties' actions show that they construed the fee agreement to cover the additional litigation over entitlement to statutory attorney's fees. The requirements of Bignotti have been met. We hold that Quality is entitled to an award of its reasonable costs and attorney's fees for time expended in prosecution of the appeals to this court and the supreme court on the issue of a subcontractor's entitlement to attorney's fees from a surety in an arbitration proceeding.
Quality is not, however, entitled to attorney's fees for the time its counsel spent before the trial court litigating the amount of fees awardable. It was clear that a court awarded reasonable attorney's fee would exceed the $29,000.00 Quality was obligated to pay under its fee agreement. Once the supreme court held that Quality was entitled to its fees from the surety, Quality's obligation to pay fees out of its own pocket ended. Litigation to establish the amount of a reasonable fee award against the surety was, therefore, for the sole benefit of the attorneys. We continue to adhere to the proposition that "[a]n attorney cannot be awarded fees for time spent litigating the issue of attorney's fees where the client ... has no interest in the fee recovered." State Farm Mutual Automobile Ins. Co. v. Moore, 597 So.2d 805, 807 (Fla. 2d DCA 1992). Quality is not entitled to an award of costs or attorney's fees for the litigation before the trial court concerning the amount of a reasonable fee.
Appellants next claim error with regard to the trial court's award of prejudgment interest on the entire fee award. Prejudgment interest is "only assessable when a claim is for the plaintiff's out-of-pocket, pecuniary loss and there is a fixed date of that loss. The purpose in awarding such interest is to compensate a party for the deprivation of his property. Attorney's fees are not liquidated damages, they are litigation costs." Temple v. Temple, 539 So.2d 564 (Fla. 4th DCA 1989) (emphasis in original). Because attorney's fees are litigation costs and not damages, it was error for the trial court to award prejudgment interest on the award of attorney's fees.
Appellants' final issue challenges the trial court's award of postjudgment interest on the entire fee award. Higley is correct in stating that it is error to award interest upon sums that are interest. See United Services Automobile Assoc. v. Smith, 527 So.2d 281 (Fla. 1st DCA 1988) ("interest should not have been ordered on the interest awarded ..., as this amounts to an invalid award of compound interest"). Because we have held that prejudgment interest on attorney's fees is improper, the erroneous award of compound interest has become moot.
The award of attorney's fees is affirmed in part, reversed in part, and the case is remanded to the trial court for a redetermination of the amount of attorney's fees to which Quality is entitled consistent with the factors and procedures set forth in this opinion.
Affirmed in part, reversed in part and remanded.
FRANK, C.J.[2], and BLUE, J., concur.
NOTES
[1] Quality moved for and was awarded appellate attorney's fees for its efforts before this court and the supreme court on the issue of statutory fees. This fact distinguishes these appeals from the appeal handled by attorney Stolba previously discussed.
[2] Judge Frank participated in this opinion on Quality's motion for clarification, but did not participate in the prior opinion.