555 So.2d 828 (1990)
STANDARD GUARANTY INSURANCE CO., Petitioner,
v.
Brenda L. QUANSTROM, Respondent.
No. 72100.
Supreme Court of Florida.
January 11, 1990.
*829 Lora A. Dunlap of Fisher, Rushmer, Werrenrath, Keiner, Wack & Dickson, P.A., Orlando, for petitioner.
Stephan W. Carter of Martinez, Dalton & Provencher, P.A., Orlando, for respondent.
Sharon Lee Stedman of Rumberger, Kirk, Caldwell, Cabaniss, Burke & Wechsler, Orlando, amicus curiae for Reliance Ins. Co.
OVERTON, Justice.
We have for review Quanstrom v. Standard Guaranty Insurance Co., 519 So.2d 1135 (Fla. 5th DCA 1988), in which the Fifth District Court of Appeal acknowledged conflict with the Third District Court of Appeal's decision in Travelers Indemnity Co. v. Sotolongo, 513 So.2d 1384 (Fla. 3d DCA 1987). We agree that there is conflict.[1] The question in this cause concerns the setting of a reasonable attorney's fee under the lodestar approach and requires a determination of whether a contingency fee multiplier must be utilized when determining the appropriate attorney's fee to be paid to a prevailing insured pursuant to section 627.428, Florida Statutes (1987).[2] We find it necessary to reexamine our decision in Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985), in view of the recent decisions by the United States Supreme Court in Blanchard v. Bergeron, ___ U.S. ___, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989), and Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987), which effectively eliminated the use of contingency fee multipliers in computing fees under the lodestar approach. Further, we find it necessary to clarify our opinion in Rowe concerning its application under the various types of fee-authorizing statutes. We find that this cause should be remanded to the trial court for consideration of whether a multiplier is applicable. We disapprove the district court's decision but approve the result.
The material facts are not in dispute. In its prior decision on the merits, reported as Quanstrom v. Standard Guaranty Insurance Co., 504 So.2d 1295 (Fla. 5th DCA 1987), the Fifth District Court of Appeal set forth the following relevant facts:
[Quanstrom] owned a 1976 Chevrolet Vega motor vehicle on which PIP insurance expired in July of 1984 but which she continued to drive until January, 1985, when the clutch cable broke and the vehicle became incapable of functioning. The vehicle's registration expired on February 17, 1985, and the vehicle was not operated or driven on the roads of this state until it was repaired on March 25, 1985, and [Quanstrom] reregistered and reinsured it on April 25, 1985. However, on March 9, 1985, [Quanstrom] sustained bodily injuries while riding as a passenger in a vehicle owned by [Terry Nelson] and insured by [Standard Guaranty Insurance Company] for personal injury protection (PIP) benefits under section 627.736(4)(d)4., Florida Statutes.
Id. at 1296. Quanstrom sought to recover $2,066.04 in PIP benefits from Nelson's insurer, Standard Guaranty Insurance Company. Standard Guaranty rejected her claim, asserting that Quanstrom was required to carry PIP coverage on her own vehicle and that her failure to do so resulted in her having no coverage under the *830 policy covering the vehicle in which she was a passenger.
After both parties moved for summary judgment, the trial court granted Standard Guaranty's motion, finding that Quanstrom was not entitled to coverage. The Fifth District Court of Appeal identified the issue as follows:
[W]hether a person injured while occupying a motor vehicle covered by personal injury protection (PIP) insurance is barred by section 627.736(4)(a), Florida Statutes (1985), from recovering PIP benefits from the insurer of the owner of that vehicle because the insured person is the owner of an uninsured motor vehicle which is not in fact being driven or operated on the roads of this state because of needed repairs.
Id. The district court reversed, finding that Quanstrom was entitled to PIP coverage under the insurance policy covering the vehicle in which she was a passenger and concluding that she was not required to carry PIP coverage on her inoperable car. The district court then directed the trial court to enter a final judgment in favor of Quanstrom. On remand, the sole issue was attorney's fees. Standard Guaranty and Quanstrom stipulated to a reasonable number of hours and a reasonable hourly rate, resulting in an agreed-upon lodestar fee of $8,100. On the merits in this cause, Quanstrom's counsel filed a complaint, filed and argued a motion for summary judgment, took one deposition, and filed and presented the issue on appeal. On remand, the only contested issue before the trial court was whether a contingency fee multiplier should be applied to the agreed-upon lodestar fee. Quanstrom's counsel contended that a multiplier must be applied and sought a multiplier of 3, which would result in a fee exceeding $24,000. The trial court rejected the application of a multiplier, finding that the fee arrangement between Quanstrom and her attorney was not a contingency fee arrangement, and found that $8,100 was a reasonable fee in this matter. The Fifth District Court of Appeal reversed the trial court, finding that this was a contingency fee agreement and that "the application of a multiplier factor is mandatory on the trial judge when the prevailing party's counsel is employed on a contingency fee basis and a reasonable attorney's fee is being calculated as directed in Rowe." 519 So.2d at 1136. We disagree with the holding that a multiplier must be applied under these circumstances.
Initially, it is necessary that we re-examine the principles adopted in Rowe. In Rowe, we found that, in setting a reasonable attorney's fee, the federal lodestar approach "provide[d] a suitable foundation for an objective structure," 472 So.2d at 1150 (citations omitted). In so holding, we recognized that, in determining the fee, courts should apply those factors enunciated in the Florida Bar Code of Professional Responsibility.[3] We explained how the lodestar amount is determined and noted how some of the code factors were integrated into this calculation. With regard *831 to contingency fee matters, we also emphasized that "[o]nce the court arrives at the lodestar figure, it may add or subtract from the fee based upon a `contingency risk' factor and the `results obtained.'" 472 So.2d at 1151 (emphasis added). We also explained that, in personal injury cases, "[w]hen the prevailing party's counsel is employed on a contingent fee basis, the trial court must consider a contingency risk factor when awarding a statutorily-directed reasonable attorney fee." Id. (emphasis added). In view of the Fifth District Court of Appeal's holding in the instant case, we emphasize that the words "must consider" do not mean "must apply," but mean "must consider whether or not to apply" the contingency fee multiplier.
The federal courts developed the lodestar method of determining attorney's fees to apply to a special class of cases, in which Congress had enacted fee-authorizing statutes to pay fees to prevailing plaintiffs for the purpose of obtaining public enforcement of Congressional acts. The lodestar method was not originally created to apply to personal injury cases. When we adopted the lodestar approach in Rowe, we were applying it to personal injury malpractice actions in which the legislature had determined that the prevailing party, plaintiff or defendant, was entitled to attorney's fees. In adopting the lodestar approach in Rowe, we realized that, without the statute, plaintiff's counsel ordinarily would enter into a contingency fee arrangement with his client, entitling counsel to receive a percentage of any amount recovered, and defendant's counsel generally would receive a fee from his client based on a fixed hourly rate.
In Rowe, we established two caps on the amount of attorney's fees to be awarded. First, we indicated that "because the party paying the fee has not participated in the fee arrangement between the prevailing party and that party's attorney, the arrangement must not control the fee award." Id. However, we qualified that statement and effectively established a cap on the fee by holding that "in no case should the court-awarded fee exceed the fee agreement reached by the attorney and his client." Id. at 1151. Second, we set limitations on the contingency fee multiplier, stating: "[I]n contingent fee cases, the lodestar figure calculated by the court is entitled to enhancement by an appropriate contingency risk multiplier in the range from 1.5 to 3." Id. The factors and caps ensured that the fee would not be significantly different in amount than it would be absent the statutory provision. See, e.g., Perez-Borroto v. Brea, 544 So.2d 1022 (Fla. 1989); Miami Children's Hosp. v. Tamayo, 529 So.2d 667 (Fla. 1988). There clearly was no intent on the part of the legislature to increase the amount of attorney's fees in this type of action for the prevailing party's counsel.
Subsequent to our Rowe decision, the United States Supreme Court, in Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987), unanimously rejected that portion of the lodestar approach pertaining to the contingency fee multiplier. While the Court rejected this method of enhancing a statutorily authorized attorney's fee, the justices were unable to agree on how the risk of nonpayment should be factored in to determine reasonable attorney's fees. In a plurality opinion, four justices stated that "we are unconvinced that Congress intended the risk of losing a lawsuit to be an independent basis for increasing the amount of any otherwise reasonable fee for the time and effort expended in prevailing." Id. at 725, 107 S.Ct. at 725. Four other justices dissented, indicating that Congress had intended to permit contingency enhancements. These justices believed a new method should be instituted. They advocated a market approach, which would require the trial judge "to determine whether a case was taken on a contingent basis, whether the attorney was able to mitigate the risk of nonpayment in any way, and whether other economic risks were aggravated by the contingency of payment." Id. at 747, 107 S.Ct. at 3098 (Blackmun, J., dissenting). In an opinion where she concurred in part and concurred in the judgment, Justice O'Connor did not completely *832 agree with the plurality's restrictive approach, but had difficulty seeing how the dissent's market approach could apply in practice. Id. at 732, 107 S.Ct. at 3090. She determined that Congress "did not intend to foreclose consideration of contingency in setting a reasonable fee under fee-shifting provisions." Id. at 731, 107 S.Ct. at 3089. She urged (1) that both trial and appellate courts "should treat a determination of how a particular market compensates for contingency as controlling future cases involving the same market," id. at 733, 107 S.Ct. at 3089, and, consistent with the plurality, (2) that "no enhancement for risk is appropriate unless the applicant can establish that without an adjustment for risk the prevailing party `would have faced substantial difficulties in finding counsel in the local or other relevant market.'" Id. (citation omitted). The plurality opinion would allow a contingency fee multiplier in very exceptional cases. Id. at 728, 107 S.Ct. at 3088. Further, the court indicated that in those rare cases the multiplier could not exceed one and one-third, id. at 730, 107 S.Ct. at 3089, and that "[a]ny additional adjustment would require the most exacting justification." Id. It is evident that the use of the multiplier has been substantially restricted, if not eliminated, by this decision.[4]
In Blanchard v. Bergeron, ___ U.S. ___, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989), the United States Supreme Court, in an eight-to-one decision, emphasized the Congressional purpose for authorizing attorney's fees in discrimination claims and distinguished these public enforcement cases from personal injury cases, stating:
Congress has elected to encourage meritorious civil rights claims because of the benefits of such litigation for the named plaintiff and for society at large, irrespective of whether the action seeks monetary damages.
... [W]e have not accepted the contention that fee awards in § 1983 damages cases should be modeled upon the contingent fee arrangements used in personal injury litigation.
Id. 109 S.Ct. at 945. There, the Court held that a contingency fee arrangement between a plaintiff and his counsel is only one factor to be considered and cannot, standing alone, limit the trial judge's discretion in setting a reasonable fee. The Court expressly held that the contingency fee agreement does not serve as a cap in determining a reasonable fee, stating: "The trial judge should not be limited by the contractual fee agreement between plaintiff and counsel." Id. at 946.
To fully understand the Delaware Valley and Blanchard decisions, it is important to recognize the primary purpose of the Congressional acts authorizing the attorney's fees in issue. The Supreme Court in Blanchard clearly stated that Congress enacted these statutes to encourage individuals to institute actions because such private litigation would substantially benefit society. Id. at 945. One commentator articulated the legislative reasoning for these statutes as follows:
The major purpose of fee-shifting statutes is to provide an incentive for the private enforcement of Congressional statutory policy. The statutory award of attorney's fees allows parties bringing actions to act both on their own behalf and on the public's behalf in promoting Congressional policy. However, private enforcement of statutes is unlikely if aggrieved citizens lack financial resources to pay lawyers for their services. Fee awards are an integral part of the remedies available to ensure compliance with various Congressional statutes.
Note, Attorney's Fee Contingency Enhancements: Toward a Complete Incentive to Litigate under Federal Fee-Shifting Statutes, 63 Wash.L.Rev. 469, 470 (1988) (footnotes omitted) (citing Senate Comm. on the Judiciary, Civil Rights Attorneys' Fees Awards Act, S.Rep. No. 1011, 94th Cong., 2d Sess. 2, reprinted in 1976 U.S. Code Cong. & Admin.News 5908-10). Since the United States Court of Appeals *833 for the Third Circuit adopted the federal lodestar method in Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp., 487 F.2d 161 (3d Cir.1973), many courts have utilized this method as an effective starting point in determining a reasonable fee.
How the courts have defined the term "contingency" in applying these fee-authorizing statutes is confusing because there are two distinct types of contingencies which courts have used interchangeably. The first type, identified as a "contingency adjustment," occurs when a fee-authorizing statute is construed to allow an enhancement of the lodestar figure because of the risk of nonpayment. The amount involved is not considered a significant factor. The second type, known as a "contingency fee arrangement," concerns those cases where the amount involved is important and includes those agreements typically entered into between an attorney and his client in personal injury litigation, where the attorney receives an agreed-upon percentage of the amount of damages recovered.[5] These two concepts are related only in that both involve the risk of nonpayment. Unlike the latter, the former ordinarily has a strong public interest factor involved. The type of contingency is not controlling; however, it is a factor which depends upon the type of case and the other circumstances involved.
Different types of cases require different criteria to achieve the legislative or court objective in authorizing the setting of a reasonable attorney's fee.[6] Although we reaffirm our decision in Rowe concerning the lodestar approach as the basic starting point, we find that the use of the contingency fee multiplier should be modified. For a better understanding, we find it appropriate to place attorney's fee cases into the following three categories: (1) public policy enforcement cases; (2) tort and contract claims; and (3) family law, eminent domain, and estate and trust matters. These categories are not intended to be all-inclusive.
The first category relates to public policy enforcement cases, which are those cases which led to the development of the lodestar approach. These cases generally present discrimination, environmental, and consumer protection issues. As noted, the primary purpose of these fee-authorizing statutes is to encourage individual citizens to bring civil actions that enforce statutory policy. The circumstances set forth by the United States Supreme Court in Blanchard and by the Fifth District Court of Appeal in LaFerney v. Scott Smith Oldsmobile, Inc., 410 So.2d 534 (Fla. 5th DCA 1982), illustrate two examples of cases which fit within this category. In LaFerney, the district court stated:
Appellee also justifies the fee award on the ground that the appellant recovered a relatively small amount of damages in proportion to the fees established. This view should be completely rejected in the context of Chapter 501. The Florida Deceptive Trade Practices Act depends for enforcement on its "enforcing authority" and the injured consumers. If, because of the small sums involved, consumers cannot recover in full their attorney fees, they will quickly determine it is too costly and too great a *834 hassle to file suit, and individual enforcement of this act will fail. The First District Court of Appeal said in Marshall v. W. & L. Enterprises Corp., 360 So.2d 1147, 1148 (Fla. 1st DCA 1978): "The obvious purpose of the `little FTC Act' is to make consumers whole for losses caused by fraudulent consumer practices... . These aims are not served if attorney fees are not included in the protection."
Id. at 536 (footnotes omitted). As explained in these cases, the amount of damages recovered is not the controlling factor. We agree with the Court in Blanchard and find that the following twelve factors, as set forth in Johnson v. Georgia Highway Express, 488 F.2d 714 (5th Cir.1974), should be considered to determine a reasonable attorney's fee in these cases:
(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.
Blanchard, 109 S.Ct. at 943 n. 5 (citation omitted). Further, "`[i]n computing the fee, counsel for prevailing parties should be paid, as is traditional with attorneys compensated by a fee-paying client.'" Id. at 943 (quoting S.R.Rep. No. 94-1011, 6, reprinted in 1976 U.S.Code Cong. & Admin.News 5913). It is important to note that the existence of a contingency fee arrangement is but one of the factors to be considered.
The second category concerns principally tort and contract cases. Here, we reaffirm the principles set forth in Rowe, including the code provisions, and find that the trial court should consider the following factors in determining whether a multiplier is necessary: (1) whether the relevant market requires a contingency fee multiplier to obtain competent counsel; (2) whether the attorney was able to mitigate the risk of nonpayment in any way; and (3) whether any of the factors set forth in Rowe are applicable, especially, the amount involved, the results obtained, and the type of fee arrangement between the attorney and his client. Evidence of these factors must be presented to justify the utilization of a multiplier. We find that the multiplier is still a useful tool which can assist trial courts in determining a reasonable fee in this category of cases when a risk of nonpayment is established. However, we find that the multiplier in Rowe should be modified as follows: If the trial court determines that success was more likely than not at the outset, it may apply a multiplier of 1 to 1.5; if the trial court determines that the likelihood of success was approximately even at the outset, the trial judge may apply a multiplier of 1.5 to 2.0; and if the trial court determines that success was unlikely at the outset of the case, it may apply a multiplier of 2.0 to 2.5. Accordingly, our Rowe decision is modified to allow a multiplier from 1 to 2.5. We find that this modification should apply to all cases in which the trial court has not set attorney's fees as of the date this opinion is released. The caps discussed in Rowe and explained in this opinion remain applicable in this category. We emphasize that the criteria and factors utilized in these cases must be consistent with the purpose of the fee-authorizing statute or rule. In this category, the legislature may be very specific in setting the criteria that can be considered. For example, deputy commissioners must apply specific criteria to determine attorney's fees in workers' compensation cases.[7]See, e.g., What An Idea, Inc. v. Sitko, 505 So.2d 497 (Fla. 1st DCA), review denied, 513 So.2d 1064 (Fla. 1987); Rivers v. SCA Services, Inc., 488 So.2d 873 (Fla. 1st DCA 1986); 2 J. Hauser, Attorney's Fees in Florida, ch. 18, p. 32 (1988). In this regard, *835 the lodestar method is consequently unnecessary. It is not our intent to change the law in these instances.
The third category involves family law, eminent domain, and estate and trust proceedings. These proceedings have special, distinct factors that are relevant in setting the attorney's fee. In some instances, a contingency fee arrangement is ethically prohibited or cannot be reasonably justified because payment is generally assured in some amount. For example, rule 4-1.5(F)(3)(a), Rules Regulating The Florida Bar, specifically prohibits a lawyer from entering into a contingency fee arrangement in family law proceedings. Further, section 61.16, Florida Statutes (1987), concerning attorney's fees in domestic relations cases, provides that "[t]he court may from time to time, after considering the financial resources of both parties, order a party to pay a reasonable amount for attorney's fees." A party's financial resources can substantially restrict the amount of attorney's fees awarded. Our case law implementing this statute requires a judge to consider the needs of the party seeking a fee and the financial resources of the parties to assure that both parties receive adequate representation. A significant purpose of this fee-authorizing statute is to assure that one party is not limited in the type of representation he or she would receive because that party's financial position is so inferior to that of the other party. Further, in eminent domain cases, the purpose of the award of attorney's fees is to assure that the property owner is made whole when the condemning authority takes the owner's property. Jacksonville Expressway Auth. v. Henry G. Du Pree Co., 108 So.2d 289 (Fla. 1958). In these cases, the attorney is assured of a fee when the action commences.[8] Similarly, an attorney's fee is generally assured in estate[9] and trust matters.[10] Under ordinary circumstances, a contingency fee multiplier is not justified in this category, although the basic lodestar method of computing a reasonable attorney's fee may be an appropriate starting point.
We have identified these categories to illustrate that different criteria for different types of cases must be considered in calculating attorney's fees. We emphasize that the principles to be utilized in computing these fees must be flexible to enable the courts to consider rare and extraordinary cases with truly special circumstances. State Farm Fire and Casualty Co. v. Palma, 555 So.2d 836 (Fla. 1990).
In the instant case, Quanstrom's attorney agreed to represent her upon the understanding that, if he were successful, he would be entitled to a fee which would be set by the court pursuant to section 627.428, Florida Statutes (1987). Implicit in this arrangement was the understanding that no fee would be paid if the attorney did not prevail. This constituted a contingency fee arrangement even though the amount of the fee was not to be determined by the amount of recovery. Palma. Here, the trial court rejected the application of a multiplier because of the erroneous conclusion that this was not a contingency fee arrangement. Therefore, it is necessary to remand the case to the trial court to consider whether to apply a contingency fee multiplier under these circumstances. In accordance with the principles set forth above, the trial judge is not required to utilize a multiplier.
We approve Travelers Indemnity Co. v. Sotolongo for the proposition that the application of a multiplier is not mandatory under Rowe when the prevailing party's counsel is employed on a contingency fee basis, and we disapprove the contrary view set forth in the opinion below. We remand the case with directions that the trial court redetermine the attorney's fee pursuant to the rationale of this opinion.
It is so ordered.
EHRLICH, C.J., and McDONALD, SHAW, GRIMES and KOGAN, JJ., concur.
BARKETT, J., concurs in part and dissents in part with an opinion.
*836 BARKETT, Justice, concurring in part, dissenting in part.
I concur with the Court's opinion except for the modification of the contingency fee multiplier. I can see no reason for reducing it from 3 to 2.5.
NOTES
[1] We have jurisdiction pursuant to article V, section 3(b)(3), of the Florida Constitution. We also find that the instant case conflicts with National Foundation Life Insurance Co. v. Wellington, 526 So.2d 766 (Fla. 3d DCA 1988).
[2] Section 627.428, Florida Statutes (1987), states, in pertinent part:

(1) Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had.
[3] These factors can be found in rule 4-1.5, Rules Regulating The Florida Bar, as follows:

(B) Factors to be considered as guides in determining a reasonable fee include the following:
(1) The time and labor required, the novelty, complexity, and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) The likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) The fee, or rate of fee, customarily charged in the locality for legal services of a comparable or similar nature;
(4) The significance of, or amount involved in, the subject matter of the representation, the responsibility involved in the representation, and the results obtained;
(5) The time limitations imposed by the client or by the circumstances and, as between attorney and client, any additional or special time demands or requests of the attorney by the client;
(6) The nature and length of the professional relationship with the client;
(7) The experience, reputation, diligence, and ability of the lawyer or lawyers performing the service and the skill, expertise, or efficiency of effort reflected in the actual providing of such services; and
(8) Whether the fee is fixed or contingent, and, if fixed as to amount or rate, then whether the client's ability to pay rested to any significant degree on the outcome of the representation.
[4] In Missouri v. Jenkins, ___ U.S. ___, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989), the United States Supreme Court recently applied the market approach in determining a reasonable fee and factored in the delay in payment and the cost of paralegals and law clerks.
[5] Justice Brennan, concurring in part and dissenting in part, stated:

Contingency adjustments under § 1988 should not be confused with contingency fee arrangements that are commonly entered into by private attorneys representing plaintiffs in civil litigation. An upward adjustment to compensate for the risk of nonpayment under § 1988 is "entirely unrelated to the `contingent fee' arrangements that are typical in plaintiffs' tort representation. In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery. Such is not the case in contingency adjustments of the kind ... describe[d] herein. Th[is] contingency adjustment is a percentage increase in the [amount obtained by multiplying hours expended by hourly rate, and is designed] to reflect the risk that no fee will be obtained." Copeland v. Marshall, 205 U.S.App.D.C. 390, 403, 641 F.2d 880, 893 (1980) (en banc).
Blum v. Stenson, 465 U.S. 886, 903 n. [*], 104 S.Ct. 1541, 1551 n. [*], 79 L.Ed.2d 891 (1984) (Brennan, J., concurring in part, dissenting in part).
[6] The United States Supreme Court has recognized that different categories exist concerning attorney's fees. Pierce v. Underwood, 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988).
[7] See § 440.34, Fla. Stat. (1987).
[8] § 73.091, Fla. Stat. (1987).
[9] § 733.106, Fla. Stat. (1987).
[10] § 738.13, Fla. Stat. (1987).