NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

FLORIDA PENINSULA INSURANCE )
COMPANY, )
        )
       Appellant, )
        )
v. )    Case No. 2D15-1152
        )              2D15-1790
MARK WAGNER and RHONDA )
WAGNER, )    CONSOLIDATED
        )
       Appellees. )
_____ )

Opinion filed June 1, 2016.

Appeals from the Circuit Court for Pinellas
County; Pamela A.M. Campbell, Judge.

David C. Borucke and Robert C. Hubbard
of Cole, Scott & Kissane, P.A., Tampa, for
Appellant.

Raymond T. Elligett, Jr. and Amy S.
Farrior of Buell & Elligett, P.A., Tampa;
Howard W. Weber of Danahy & Murray,
Tampa, for Appellees.


LUCAS, Judge.

          Florida Peninsula Insurance Company (Florida Peninsula) appeals a final

judgment that construed an insurance policy provision in favor of Rhonda and Mark

Wagner, as well as the court's award of attorney's fees against it following a jury's verdict on damages. We find merit in Florida Peninsula's argument that the circuit court erroneously applied a multiplier to the attorney's fees awarded to the Wagners and reverse that order accordingly. We affirm the circuit court's judgment in all other respects.

I.

The underlying facts in this case are fairly succinct and, in many regards, undisputed. We recount them only insofar as they pertain to the circuit court's justification for applying a multiplier to the Wagners' award of attorney's fees.

When a refrigerator water line broke and caused some flooding inside their house, the Wagners sought coverage from their insurer, Florida Peninsula, under their property insurance policy. Florida Peninsula retained a remediation company to drain the water and dry out the property. But once the house was in a condition to have the extent of its damage ascertained, a dispute arose between the Wagners and Florida Peninsula concerning Florida Peninsula's invocation of an "Option to Repair" provision in the policy,[1] the scope of remedial work that would be required to repair the damage from the leak, and the selection and hiring of a contractor to effectuate those repairs.

---

[1]That provision afforded Florida Peninsula the following option to provide coverage for "Coverage A—Dwelling" claims: "If we give you written notice within 30 days after we receive your signed, sworn proof of loss . . . [w]e may repair the damaged property with material of like kind and quality without deduction for depreciation." We agree with the circuit court's conclusion that Florida Peninsula did not properly exercise this option because Florida Peninsula's "referral" of contractors to the Wagners (who the Wagners, not Florida Peninsula, would then engage) did not satisfy the provision's obligation that "we [Florida Peninsula] would be required to repair the damaged property." See Wash. Nat'l Ins. Corp. v. Ruderman, 117 So. 3d 943, 949-50 (Fla. 2013) ("[I]t has long been a tenet of Florida insurance that an insurer, as the writer of an insurance policy, is bound by the language of the policy, which is to be construed

- 2 -

Unable to reach an agreement with their insurer, the Wagners initially hired an attorney, a neighbor, who soon realized that he could not adequately represent their interests. Not long after his withdrawal, the Wagners retained the law firm of Danahy & Murray under a contingency fee arrangement. The firm filed the initial complaint on the Wagners' behalf and capably represented them throughout the underlying litigation. The case proceeded through discovery, motion hearings, a mediation, and a nonjury trial in which the Wagners prevailed on their declaratory relief claim. A subsequent jury trial on damages yielded a verdict in favor of the Wagners for all of their coverage claims in the total amount of $71,123.79.

The Wagners then filed a motion to recover attorneys' fees and costs pursuant to section 627.428, Florida Statutes (2013). At the outset of the hearing on the motion, the parties reached a stipulation as to the reasonable number of hours and hourly rates for the Wagners' individual attorneys and paralegals. The stipulated fee rates ranged between $250 and $450 an hour, depending on the particular attorney's experience, with the majority of the work performed by one attorney whose hourly billing rate was $375 an hour. Having agreed upon a lodestar amount of $243,755 in attorney's fees, the Wagners then urged the circuit court to apply a multiplier of between 1.75 and 2.25 to the lodestar award.

The Wagners did not testify at the fee hearing. Their trial counsel relayed the Wagners' experience with their prior attorney. He then remarked that he felt their case was unique and that it had been vigorously litigated. The Wagners also called an

liberally in favor of the insured and strictly against the insurer." (quoting Berkshire Life Ins. Co. v. Adelberg, 698 So. 2d 828, 830 (Fla. 1997))).

expert witness who had contacted a few attorneys prior to the hearing to ask whether it was important to have the possibility of a contingency fee multiplier in deciding whether to accept a first-party coverage dispute such as the Wagners'. The expert never relayed what he learned from those conversations. He did respond affirmatively (but without any elaboration) to the question of whether the skill required to prevail in a case like this one would "limit the number of attorneys" the Wagners could have "gone to for help." In response, Florida Peninsula's expert pointed out that there were 258 local attorneys listed in the Martindale Hubbell directory who held themselves out as first-party insurance attorneys. Florida Peninsula also argued that the amount in dispute and ultimately recovered was already substantially smaller than the amount of stipulated fees the Wagners' attorneys would recover.

The circuit court agreed with the Wagners and applied a 2.0 multiplier to the lodestar award. The court was apparently impressed by the Wagners' counsel's willingness to see the matter through trial. Remarking that "there may be multiple attorneys out there that are willing to go to trial, actually going to trial is another issue," the court likened trial experience to a market condition that necessitated a contingency fee multiplier. Or as the court put it, "It is the rare attorney that actually goes all the way through trial to the completion." As we will explain, none of these reasons supported the application of a fee multiplier in this coverage dispute.

II.

We review a circuit court's decision to apply a multiplier to an attorney's fee award for abuse of discretion. USAA Cas. Ins. Co. v. Prime Care Chiropractic Ctrs., P.A., 93 So. 3d 345, 347 (Fla. 2d DCA 2012). A lodestar computation for attorney's

- 4 -

fees—that is, a reasonable hourly rate multiplied by a reasonable number of hours for the work performed—carries "a strong presumption" that it represents a reasonable fee for legal services provided on a contingency basis.  Federated Nat'l Ins. Co. v. Joyce, 179 So. 3d 492, 493 (Fla. 5th DCA 2015) (quoting Progressive Express Ins. Co. v. Schultz, 948 So. 2d 1027, 10130 (Fla. 5th DCA 2007)).  Indeed, as the Third District succinctly observed, "[t]he application of a multiplier is the exception, not the rule." State Farm Fla. Ins. Co. v. Alvarez, 175 So. 3d 352, 357 (Fla. 3d DCA 2015).  With that in mind, a court must consider three factors before it may award a fee multiplier in a contract dispute:

> (1) whether the relevant market requires a contingency fee multiplier to obtain competent counsel; (2) whether the attorney was able to mitigate the risk of nonpayment in any way; and (3) whether any of the factors set forth in [Florida Patient's Compensation Fund v. Rowe, 472 So. 2d 1145, 1150 (Fla. 1985)] are applicable, especially, the amount involved [in the litigation], the results obtained, and the type of fee arrangement between the attorney and his [or her] client.

Standard Guar. Ins. Co. v. Quanstrom, 555 So. 2d 828, 834 (Fla. 1990).

In the case at bar, the circuit court's justification for a multiplier, and the evidence before it, fell short of the dictates of Quanstrom.  There was no showing or finding that without the prospect of a multiplier to an otherwise reasonable fee award, the Wagners would have had difficulty finding competent counsel to represent them in this insurance coverage dispute.  See Sun Bank of Ocala v. Ford, 564 So. 2d 1078, 1079 (Fla. 1990) ("[T]here should be evidence in the record, and the trial court should so find, that without risk-enhancement plaintiff would have faced substantial difficulties in finding counsel in the local or other relevant market." (quoting Pennsylvania v. Del.

Valley Citizens' Council for Clean Air, 483 U.S. 711, 731 (1987))); Prime Care

Chiropractic Ctrs., P.A., 93 So. 3d at 347 ("If there is no evidence that the relevant

market required a contingency fee multiplier to obtain competent counsel, then a

multiplier should not be awarded.").  Simply put, there was no evidence that the Tampa

Bay legal market could not provide competent counsel for the Wagners' case at the

prevailing hourly rates.  See Quanstrom, 555 So. 2d at 834.  Certainly, most (all?)

attorneys would *prefer* to collect twice their market rate at the conclusion of a successful

contingency fee case, a point that perhaps needed no expert testimony to illuminate.  It

does not follow, though, that that preference would create a dearth of competent

lawyers who *would* have taken this case at the prevailing rate.  On that critical point, this

record is silent.

Nor can we accept the circuit court's justification that the case's resolution

through a trial, in and of itself, merited a fee multiplier.  Again, a contingency fee

multiplier under Quanstrom serves to correct a deficiency in a legal market for

representation.  See Sun Bank of Ocala, 564 So. 2d at 1079; Prime Care Chiropractic

Ctrs., P.A., 93 So. 3d at 347; see also Bell v. U.S.B. Acquisition Co., Inc., 734 So. 2d

403, 411 (Fla. 1999) ("A primary rationale for the contingency risk multiplier is to provide

access to competent counsel for those who could not otherwise afford it.").  A

Quanstrom fee multiplier is not a surrogate for a sanction, and it should not be applied

based solely, and in hindsight, upon how far along in the civil adjudication process a

particular case happened to be resolved.[2]  There was no evidence presented below, nor

---

[2]The relative duration of the litigation is accounted for in the number of hours awarded under the lodestar computation.

any specific finding by the circuit court, that the Wagners could not find and retain competent counsel for their case through trial with the prospect of remuneration at a prevailing market rate.[3]

                                    III.

Accordingly, we reverse the circuit court's order granting the Wagners' motion for attorney's fees to the extent that it applied a multiplier to the fee award and remand with instructions to enter a new order consistent with this opinion. We affirm the judgment of the circuit court in all other respects.

Affirmed in part; reversed in part; remanded with instructions.

MORRIS and BLACK, JJ., Concur.

---

[3]We recognize the waning use of trials to resolve many civil disputes. See Steven Wisotsky, Sounds and Images of Persuasion: A Primer, 84 Fla. B.J. 40, 40 (2010) (noting that in "this era of the 'vanishing trial,' " less than two percent of cases filed are tried to verdict). But we do not glean from this record that an insurance coverage trial has become such a Halley's Comet event that the majority of local, competent insurance lawyers would refuse to handle such a matter for anything less than double their market rates.