CANADY, J., dissenting. Because competent, substantial evidence does not support the trial court’s use of a multiplier in this case, I would approve the result reached by the Fifth District. I agree that the Fifth District misstated this Court’s case law regarding the application of the contingency fee multiplier. But because the multiplier was used without sufficient justification under the requirements of our case law, the district court nonetheless reached the correct result in reversing the fee award. The record here does not support the conclusion that the availability of the multiplier was necessary for the insureds to obtain counsel. I therefore dissent from the majority’s decision approving use of the multiplier here. Although a proper application of our case-law does not justify the use of the multiplier in this case, the majority’s decision-r-which slides lightly over the insufficiency of the basis advanced for the multiplier here—illustrates the arbitrary results that can flow from application of the contingency fee multiplier. Of course, the problems associated with the contingency fee multiplier have previously been exposed. Twenty-five years ago in City of Burlington v. Dague, 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992), the United States Supreme Court unequivocally repudiated the use of the contingency fee multiplier. The majority’s decisión here underscores the need for a full re-examination in a future case' of our multiplier jurisprudence in light of the reasoning of Pague. I. THE USE OF A MULTIPLIER WAS NOT SUPPORTED BY COMPETENT, SUBSTANTIAL EVIDENCE There is nothing “competent” or “substantial” about the evidence relied on by the trial court in awarding the multiplier. See State Farm Fire & Cas. Co. v. Palma, 555 So.2d 836, 838 (Fla. 1990). In order to be competent and substantial, the evidence must “comport[ ] with logic and reason.” Gonci v. Panelfab Prod., Inc., 179 So.2d 856, 858 (Fla. 1965). Because the testimony of petitioners’ attorney and petitioners’ fee expert does not form a logical and reasonable foundation upon which to conclude— as the trial court did—that a multiplier was required, the Fifth District properly reversed the trial court’s use of the multiplier. See Federated Nat’l Ins. Co. v. Joyce, 179 So.3d 492, 494 (Fla. 5th DCA 2015). The trial court’s decision to award a multiplier is seriously flawed. This Court has repeatedly emphasized the importance of proper justification for the imposition of the multiplier. Beginning in Florida Patient’s Compensation Fund v. Rowe, 472 So.2d 1145, 1151 (Fla. 1985), this Court explained that if a trial court adjusts the calculated lodestar amount to account for “a ‘contingency risk’ factor,” the trial court “must state the grounds on which it justifies the enhancement.”[5] In Standard Guaranty Insurance Co. v. Quastrom, 555 So.2d 828, 834 (Fla. 1990), this Court made clear that if a trial judge uses a multiplier, there must be evidence “presented to justify the utilization of [the] multiplier.” And in Bell v. U.S.B. Acquisition Co., 734 So.2d 403, 406 (Fla. 1999), this Court once again noted, that contingency fee multipliers can be applied, “so long as the evidence supports the need.” Here, the trial court relied, in part, on certain testimony from petitioners’ attorney and fee expert that, both were unaware of any other attorneys in all of St. Johns County that “specialized” in representing first-party plaintiffs against their insurance companies on coverage issues. Petitioners’ attorney and fee expert also both testified that this was a complex commercial case. Petitioners’ fee expert further testified that a contingency fee multiplier was necessary to obtain competent counsel, based on the expert’s having “interviewed attorneys that accept claims against insurance companies where coverage has been denied.”[6] And petitioners’ attorney testified that she took the case with the “hope and expectation” that, should she “succeed for [petitioners],” the court would award a multiplier. Based on this testimony, the trial court determined that this was a “difficult” case and “the issues involved were complex, involving policy interpretation, application of exclusion language, agency law, and other issues.” And the'trial court concluded that “there are few or no other attorneys who undertake this work who have offices in the St. Augustine area” and that petitioners would likely not have found a competent attorney in that area who would have agreed to take the case “without the possibility of a contingency fee. multiplier.” As. an initial matter, it is unclear why the trial court chose attorneys with offices in St. Augustine as the “relevant market” for purposes of Quanstrom.[7] While petitioners’ attorney has an office in St. Augustine and testified that the relevant market should be St. Augustine, petitioners’ own fee expert testified that the relevant market was all of St. Johns County, and respondent’s fee expert testified that the relevant market includes Duval County— given that he and many other attorneys based in Duval County also practice in St. Johns County. Moreover, respondent’s fee expert testified that there are “thousands” of lawyers in Jacksonville, and petitioners’ attorney admitted that she is unaware of how many attorneys in Duval County would take first-party insurance claims. The trial judge chose to focus on attorneys “who have offices in the St; Augustine area” and did so without any reasoned explanation. The trial court’s decision cannot be reconciled with Quanstrom, which adopted a “relevant market” factor, not a “local market” factor. See Quanstrom, 555 So.2d at 834. If the City of St. Augustine somehow only has one attorney who handles these insurance disputes and yet the neighboring county is home to thousands of attorneys, then that neighboring county should obviously be part of any “relevant market” analysis. The trial court’s unexplained decision here is grossly inadequate. By reinstating the trial court’s award of a multiplier in this case, the majority is essentially holding that the “relevant market” is' whatever the trial court says it is. The majority should instead recognize that the “relevant market” factor must take into account the fact that the market for delivering legal services is dynamic and is not subject to narrow geographic restrictions. It is not rational to limit the “relevant market” in this case to attorneys who have offices in St. Augustine.[8] In addition, awarding a multiplier based, even in part, on testimony that petitioners’ attorney may be the only attorney in St. Johns County who “specialized” in first-party coverage denials is problematic, for several reasons. As an initial matter, even assuming that petitioners’ attorney is the only- such specialist, Qjuanstrom refers to a person’s ability “to obtain competent counsel,” not “specialized” counsel. Quanstrom, 556 So.2d at 834 (emphasis added). Petitioners’ attorney’s specialization is irrelevant for purposes of the multiplier in this case. Moreover, awarding a multiplier based on this finding is tantamount to rewarding an attorney for having a monopoly on a particular geographic market. That hardly jibes with any public policy underlying fee-shifting statutes. See, e.g., Dague, 505 U.S. at 563, 112 S.Ct. 2638 (“These statutes were not designed as a form of economic relief to improve the financial lot of lawyers.” (citation omitted)). An examination of petitioners’, attorney’s testimony reveals that she routinely takes first-party insurance disputes and almost never does so on .a fixed hourly basis. The other testimony relied.upon by the trial court hardly rises to the- level of competent; substantial evidence. For example, petitioners’ fee expert indicated that he “prepared e-mails to various attorneys, some in this area and some that were outside of this area,” In other words, the trial court relied on testimony that the expert sent e-mails to an undisclosed number of attorneys. Petitioners’ fee expert also earlier testified that he had spoken with approximately four attorneys in the St. Johns County community and with an undisclosed number of attorneys from Jacksonville. This Court should hold that this expert testimony is insufficient—as a matter of law—to prove that the relevant market “requires” a fee multiplier. The trial court also noted that petitioners’ fee expert “reviewed numerous orders from this circuit and across the state.” But a review of the transcript reveals that the expert reviewed those orders-'primarily for the purpose of determining a reasonable hourly fee—not the applicability of a multiplier. Moreover, the fee expert testified that he had not even read all'of the orders on which he was relying, and that the orders almost exclusively related to cases outside St. Johns County.[9] The trial court also relied on testimony from petitioners’ attorney and fee expert in concluding that this was a “difficult” case involvirig numerous “complex” issues. But the- record does not support the trial court’s conclusion. Rather, the record supports the district court’s conclusion that this was a simple, straightforward case. See Joyce, 179 So.3d at 494 (“This was not a complicated case. Either the Joyces had falsified their insurance application, or Federated had made an error.”). Indeed, the evidence shows that Federated agreed to honor the claim- immediately after the depositions of the two insurance agents— the only- depositions in the case—when it was conclusively determined that the agent did, in fact, have the original paper application showing that the Joyces had disclosed their previous losses,[10] The trial court also noted that petitioners’ attorney testified she took the case with the “hope and expectation” that the trial court would award a multiplier. Relying on this ■ testimony* even in partáis illogical, as aptly noted by the Sécond District in a recent decision: Certainly, most (all?) attorneys would prefer to collect twice their market rate ■at the conclusion of a successful contingency fee case, a point that perhaps needed no expert testimony to illuminate. It does ■ not follow, though, that that preference would- create a dearth of competent lawyers who would have taken this case at the prevailing rate. On .that critical point, this record is silent. Florida Peninsula Ins. Co. v. Wagner, 196 So.3d 419, 422 (Fla. 2d DCA 2016). Lastly, the evidence 'does not reasonably support the conclusion that the multiplier is necessary in this case to achieve the specific policy purpose on which this Court previously relied in justifying its use. In Bell, this Court identified the primary ra-tiohale for the multipliér as follows: [I]t assists parties with legitimate causes of action or defenses in obtaining competent legal representation even if they are unable to pay an attorney on an hourly basis. In this way, the availability of the multiplier levels the playing field between parties with unequal abilities to secure legal representation. • Bell, 734. So.2d at 411. The majority here quotes that same excerpt from Bell. See majority, op. at 1130. But as explained next, it very much appears that “the playing field” is already “level[],” Bell, 734 So.2d at 411, without,the need for a contingency fee multiplier, at least with respect to insurance dispute cases. The district court below recognized as much, noting: “As one would anticipate given today’s legal market, there was' no evidence the Joyces had any difficulty obtaining counsel to handle this matter. Indeed, it took only one phone call: for the- Joyces to secure counsel.” Joyce, 179 So.3d at 494. The district court did not err in stating the obvious. The homeowners’ insurance dispute in this case involves the calculation of fees under' section 627.428, Florida Statutes, which allows a prevailing insured in an insurance dispute to recover reasonable attorney’s fees from the-insurer.[11] Insurance disputes under Florida’s no-fault personal injury protection (PIP) laws similarly involve section 627.428.[12] Indeed, Quanstrom was a PIP case involving section 627.428, ás was Palma, a case decided by this Court on the same day as Quanstrom. In both cases, this Court recognized the availability of the multiplier. In 2012, the Legislature revised Florida’s PIP laws by passing HB 119—Motor Vehicle Personal Injury Protection Insurance. See ch. 2012-197, Laws of Fla. As codified in section 627.736(8), Florida Statutes, this legislative change included an amendment specifically prohibiting the use of a contingency fee multiplier in calculating reasonable attorney’s fees to be awarded to a prevailing insured in a PIP dispute. See ch. 2012-197, § 10, at 30-31, Laws of Fla. Not surprisingly, the post-2012 unavailability of a multiplier in PIP cases has not had any negative effect on insureds’ ability to obtain counsel in PIP cases— cases which by their very nature generally involve disputed claims of less than $10,000. In fact, this Court recently noted that PIP cases appear to have become even more prevalent in recent years. See In re Certification of Need for Additional Judges, 206 So.3d 22, 33 (Fla. 2016). And in the instant case, petitioners’ own fee expert acknowledged the obvious on cross-examination—that nowhere in the State of Florida is there a “paucity of attorneys” willing to take PIP cases: Q. But in the PIP cases, you would agree that where attorney’s fees is awarded, the amount of controversy is by definition generally $10,000 or less? A. Generally I would say yes it is. Q. All right. And is there any paucity of attorneys that you’re aware of in the state of Florida with regard to representation of clients who have PIP claims? A. Well, I hate to say this, but I’m going to say it. No, there’s not. • Given that Florida’s 2012 PIP amendments have had no negative effect on PIP insureds’ ability to obtain counsel in.PIP cases despite the absence of the availability of a contingency fee multiplier in those cases, it is apparent that the playing field is already “level[ ],” Bell, 734 So.2d at 411, without the need for a multiplier. Attorneys are abundantly motivated to take PIP cases based solely on . the opportunity to earn the lodestar amount under section 627.428, Florida Statutes. Given the undisputed availability of legal representation in PIP cases notwithstanding the bar on use of the multiplier, there is no reason to believe that attorneys in homeowners’ insurance disputes are somehow only motivated because a possible multiplier is also involved. The undisputed experience under the PIP statute dictates that a multiplier is not, in fact, “required” in homeowners’ insurance cases. The district court below properly refused to ignore this reality. In short, the reasoning of Bell cannot justify the continued application of the multiplier in insurance dispute cases involving the calculation of “reasonable” attorney’s fees under section 627.428, Florida Statutes. And the majority offers no alternative Reasons to justify the continued application of the multiplier in these cases. Despite the fact that petitioners’ attorney may be highly qualified, no public policy supports the windfall being awarded to her in this ease. Indeed, it is hardly surprising that petitioners’ attorney testified that she “knew going in this was a [section] 627.428 case” and that taking the case on a contingency fee basis presented .her with “an opportunity to make a big fee if [she] should succeed.” (Emphasis added.) To sum up, the majority here upholds the award of. a 2.0 multiplier in a case in which: (1) the plaintiffs’ fee expert testified that he contacted an undisclosed number of attorneys who said they would not have taken the case without at least the possibility of a multiplier; (2) that same fee expert begrudgingly “hate[d]” to admit that plaintiffs’ attorneys throughout the entire State of Florida are abundantly motivated to take PIP cases (even though PIP cases contain no possibility of a multiplier); (3) that same fee expert presented no explanation of how and why the economics of the market -for legal representation in homeowners’ insurance cases are fundamentally different from the market for PIP cases; (4) the plaintiffs own attorney testified that she has no idea how many attorneys in the neighboring county—which is home to thousands of attorneys—would have taken this .case in the absence of a multiplier; (5) the plaintiffs needed only one phone call to secure counsel; and (6) none of the “difficult” and “complex” issues purportedly inherent in this case played out during the course of the dispute. To affirm the .award of a multiplier in this case—let alone a multiplier of 2.0—is to set the bar as low ,as possible for the imposition of thq multiplier. This Court should instead acknowledge that the trial court’s findings are fundamentally flawed and the evidence present ed in this case does not “comport[] with logic and reason.” Gonci, 179 So.2d at 858. II. THE MAJORITY’S DECISION HERE POINTS TO THE NEED FOR RE-EXAMINATION OF OUR MULTIPLIER JURISPRUDENCE IN LIGHT OF PAGUE Twenty-five years ago in Pague, the United States Supreme Court definitively re-addressed the applicability of the multiplier under federal fee-shifting statutes after having previously left the issue unresolved in Pennsylvania v. Delaware Valley Citizens’ Council for Clean Air, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987). See Pague, 505 U.S. at 559, 112 S.Ct. 2638 (“[T]he question is essentially identical to the one we addressed, but did not resolve, in [Delaware Valley].”). The six-Justice majority in Pague unequivocally repudiated the use of the multiplier, with Justice Scalia cogently, explaining the Court’s reasons for doing so. The majority here declines to “accept the Pague majority’s rationale for rejecting contingency fee multipliers.” Majority op. at 1132. In doing so, the majority fails to recognize how its decision in this case perfectly illustrates all of the reasons why Pague categorically rejected the multiplier. Pague began by noting that any risk enhancement to the lodestar would inherently “double count[ ],” Dague, 505 U.S. at 563, 112 S.Ct. 2638, by “likely duplicating] in substantial part factors already subsumed in the lodestar,” id at 562, 112 S.Ct. 2638. Pague reasoned that the risk of loss in any given case always involves, among other things, “the difficulty of establishing [the legal and factual] merits” in the case, and that this factor will be “ordinarily reflected in the lodestar—either in the higher number of hours expended to overcome the difficulty, or in the higher hourly rate of the attorney skilled and experienced enough to do so.”[13] Id. at 562, 112 S.Ct. 2638. Here, that “duplication],” id, is apparent on the face of the trial court’s reasoning. For example, in awarding the multiplier,-the trial court noted that “these cases are difficult” and “the issues involved were complex, involving policy interpretation, application of exclusion language, agency law, and other issues.” As indicated above, none of these purportedly “complex” issues played out during the coürse of this case, in which the insurer conceded coverage after the very first deposition in the case, ,But even assuming that this case somehow involved complex and difficult issues, Pague explained that “the difficulty of establishing [the legal and factual] merits” in a particular case is a factor that will ■be “ordinarily reflected in the lodestar.” Id. Indeed, this Court itself has previously-made clear that the difficulty of the .case and the complexity of the issues -are properly considered in the first half of the lodestar calculation—the reasonable number of hours. See Bell, 734 So.2d at 407 (“[W]e stated [in Rowe] that ‘the novelty and. difficulty of the question involved’ should be considered in determining, the number of hours reasonably expended on the. litigation.”); Rowe, 472 So.2d at 1150 (“The ‘novelty and difficulty of the question involved’ should nortaally be reflected by the number of hours reasonably expended on the litigation”’). Double counting results from relying on those very same factors in awarding a multiplier. See Delaware Valley, 488 U.S. at 731, 107 S.Ct. 3078 (O’Connor, J., concurring in part and concurring in the judgment) (agreeing with the plurality that' it was improper to employ a risk multiplier based on the “novelty and difficulty of the issues presented,” given that those “are factors;adequately reflected in the lodestar”). After rejecting the notion of awarding a multiplier based on the riskiness of any specific case, Pague next rejected the notion of a class-wide approach to the multiplier, Specifically, ■ Pague rejected the market-centric version of the “relevant market” factor proposed by Justice O’Connor in her Delaware Valley concurrence.[14] Dague, 505 U.S. at 563-65, 112 S.Ct. 2638. Pague reasoned that it was impractical to adopt a class-wide market approach that prohibited, the “assessment of the ‘riski ness’ of any particular case,” given that the “predominant reason that1 a- contingent-fee claimant has difficulty finding counsel in any legal market ... is that attorneys view his case as too risky.”[15] Id. at 564, 112 S.Ct. 2638, Pague ultimately concluded that such an approach could not “intelligibly be applied.” Id. at 563, 112 S.Ct. 2638. Here, the majority reaffirms the “relevant market” factor while seemingly adopting a market-centric approach, see majority op. at 1134 (“The Joyces contend that the Fifth District also erred in looking at their actual experience in the market rather than looking at the relevant market itself;-as required by- Quanstrom and Bell. We agree.”), and while simultaneously noting the relevance of and upholding “the trial court’s findings” regarding “the complexity of these types of cases and this case in particular,” majority op. at 1134 (emphasis added). And in doing so, the majority provides no definition of the nature and scope of the “relevant market” factor. The absence of a meaningful definition—either in the majority opinion in this case or in this Court’s decision in Quan-strom—lends support to the Supreme Court’s ‘conclusion that the factor, in fact, cannot “intelligibly be applied.” Dague, 505 U.S. at 563, 112 S.Ct. 2638. Pague next reasoned that allowing contingency" enhancement under fee-shifting statutes that authorize a reasonable fee would impermissibly permit attorneys to offset losses from .other cases and thus “pay for the attorney’s time (or anticipated time) in cases where his client does not prevail.” Id. at 565, 112 S.Ct. 2638. Here, the majority specifically notes that petitioners’ attorney testified that “she would not have taken the case without the possibility of a multiplier because she often fails to recover some or all of the fees owed on these first-party cases.” Majority op. at 1134-35. Thus, the majority reaffirms the use of the multiplier based, in part, on the notion that the multiplier helps to. offset losses from other cases. In- doing so, the majority effectively reads section 627.428, Florida Statutes, which expressly permits the recovery of a “reasonable” fee, as somehow authorizing the award .of an excessive fee in a case simply because the attorney in that case may be unsuccessful in some other case or cases. But the plain language of section 627.428 does not contemplate -what may or may not have happened in other cases. Rather, section 627.428 simply allows for the award of “a reasonable sum as fees or compensation for the insured’s or beneficiary’s attorney prosecuting the suit in which the Recovery is had.” § 627.428(1), Fla. Stat. (emphasis added). Pague next noted that the Supreme Court had been generally rejecting the contingent-fee model in favor of the lodestar model, “even though the lodestar model often (perhaps, generally) results in a larger fee award than the qontingent-fee model.”[16] Dague, 505 U.S. at 565-66, 112 S.Ct. 2638. And Pague concluded that contingency. enhancement to the lodestar would produce an undesirable “hybrid scheme that resorts to the contingent-fee model to increase a fee award but not to reduce it.” Id. at 566, 112 S.Ct. 2638. This case perfectly "demonstrates that undesirable hybrid scheme.-Here, petitioners’ attorney .testified that the amount in controversy, was approximately $15,000 and that the parties eventually agreed on a recovery amount of $23,-500, exclusive of attorney’s fees. The trial court-ultimately determined that a reasonable lodestar amount was $38,150, So the lodestar obviously exceeded—by many multiples—any contingent- fee payable on that recovery. The trial court then applied a contingency enhancement of 2.0, ¡ doubling the attorney's fee award to $76,300. Thus, even though “ [contingency enhancement is a feature inherent in the contingent-fee model,” id., calculating “reasonable” attorney’s fees in this fashion ignores the contingent-fee agreement for all purposes except for the purpose of. increasing the lodestar amount. And that approach will “often (perhaps, generally),” id,, end up resulting in a Tee windfall for .the attorney—as is very much the case here. Indeed, it is hardly surprising that petitioners’ attorney testified regarding the. lure of “mak[ing] a big fee,” even though section 627.428, Florida Statutes, only authorizes a “reasonable” fee. Lastly,' Pague pointed to the “ready ad-•ministrability” of the lodestar approach, concluding that “[contingency enhancement would make the setting of fees more complex and arbitrary, hence more unpredictable, and hence more litigable.”[17] Id. at 566, 112 S.Ct. 2638. Here, the majority concludes that “there is no support in state courts, and indeed none has been offered, that the availability of contingency fee multipliers ‘make[s] the setting of fees more complex and arbitrary.’” Majority op. at 1133 (quoting Dague, 505 U.S. at 566, 112 S.Ct. 2638). But one need look no further than the instant case to find support for the Supreme Gourt’s conclusion. For example, as explained previously, the trial court’s decision to-limit the “relevant market” in this case to attorneys who have “offices in the St.'-Augustine area” could not be any more arbitrary. And the majority’s decision to uphold a multiplier of 2.0 in this simple, straightforward case which lacks competent, substantial evidence will hardly make the setting of fees less “unpredictable” or “litigable.” Dague, 505 U.S. at 566, 112 S.Ct. 2638. III. CONCLUSION I therefore would affirm the Fifth Pis-trict’s decision .to -reject -the trial court’s award of a contingency fee multiplier. Competent, substantial evidence does not “justify,” Quanstrom, 555 So.2d at 834, the trial court’s use of a multiplier in this simple case involving section 627.428, Florida Statutes. The-majority’s decision to uphold the fee award in this case embodies all of the flaws identified by the Supreme Court in Pague regarding use of the multiplier. The majority’s decision points unmistakably to the need for..a full re-examination of this Court’s multiplier jurisprudence. I dissent. LAWSON, J., concurs. . In Rowe, this Court "adopt[ed] the federal lodestar approach for computing reasonable attorney fees.” Rowe, 472 So.2d at 1146. The lodestar approach involves calculating the “lodestar” amount by multiplying the number of attorney hours reasonably expended by a reasonable hourly rate. Id. at 1150-51. . Petitioners’ fee expert apparently spoke with four attorneys in the St. Johns County community and with an undisclosed number of attorneys from Jacksonville. . In Quanstrom, this Court established three factors to be considered by trial courts in determining the necessity of a multiplier in cases involving tort and contract claims, including insurance coverage disputes. Quanstrom, 555 So.2d at 834. The first factor is "whether the relevant market requires a contingency fee multiplier to obtain competent counsel.” Id. Quanstrom did not define the nature and scope of this "relevant market” factor. .In approving the trial court’s decision to ignore the thousands of attorneys in Duval County, the majority reasons that the “relevant market” factor considers "not just whether there are attorneys in any given area, but specifically whether there are attorneys in the relevant market who both have the skills to handle the case effectively and who would have taken the case absent the availability of a contingency fee multiplier.” Majority op. at 1135. In other words, the majority appears to conclude that despite the sea of lawyers in the neighboring county, the Joyces nevertheless would have had difficulty finding a competent attorney in that county who would have been willing to take their case based solely on the lodestar. In my view, that conclusion ignores "today’s legal market,” Joyce, 179 So.3d at 494, and is unsupported by competent, substantial evidence-in this case. . The fact that the trial court noted the relevance of these "numerous orders”—almost all of which related to cases outside St. Johns County—further demonstrates the wholly arbitrary nature of the trial court’s eventual decision to focus on attorneys who have "offices in the St. Augustine area.” . In upholding the trial court’s conclusions regarding the complexity of this case and the need for the multiplier, the majority here notes that Federated did not .“finally offer[] to settle the case" until two months after Federated agreed to honor the claim. Majority op. at 1134. But the fact that the insurance company delayed for two months before agreeing on a final settlement with petitioners does not somehow render this a "complex” case. And that delay certainly has no bearing on the issue of "whether the relevant market requires a contingency fee multiplier." Quanstrom, 555 So.2d at 834. The majority also notes as relevant the fact that "the Joyces’ attorney spent more than 100 hours working on the case.” Majority op. at 1134. But'again, that fact does not somehow render this a "complex" case. Moreover, a review of the Joyces’ attorney’s timesheet reveals that nearly fifty hours of that time was spent after Federated agreed to honor the claim. . Section 627.428 authorizes an award of fees to a prevailing insured but does not authorize an award of fees to a prevailing insurer. . Under Florida’s PIP laws, motorists are generally required to carry at least $10,000 in PIP coverage. See generally §§ 627.730-627.7405, Fla. Stat. (2017) ("Florida Motor Vehicle No-Fault Law”). Florida’s PIP laws also contain an attorney’s fees provision, see § 627.736(8), Fla. Stat., which allows a successful insured, to recover attorney’s fees from the insurer pursuant to section 627.428, Florida Statutes, subject to certain limitations. . Pague further concluded that awarding a multiplier based on the riskiness of- any particular case would "provide attorneys with the same incentive to bring relatively merit-less claims as relatively meritorious ones." Dague, 505 U.S. at 563, 112 S.Ct. 2638. . In Delaware Valley, the Supreme Court’s plurality noted that “there should be evidence in the recórd, and the’ trial court should so find, that -Without risk enhancement plaintiff would have faced substantial difficulties in finding counsel in the local or other relevant market.” Delaware Valley, 483 U.S. at 731, 107 S.Ct. 3078. Justice O'Connor "agree[d] with the plurality” on that point, id. at 733, 107 S.Ct. 3078 (O'Connor, J., concurring in part and concurring in the judgment), but she argued that "compensation for contingency must be based on the difference in market treatment of contingent fee cases as a class, rather than on an assessment of the 'riskiness' of liny particular case,” id. at 731, 107 S.Ct. 3078 (O'Connor, J., concurring in part and concurring in the judgment). . Dagtie also- rejected a class-wide market approach on the basis that it "cannot possibly achieve- the supposed goal of mirroring market incentives.'” Dague, 505 U.S. at 564, 112 S.Ct. 2638. . In so noting, Pague recognized that the “lodestar method may ‘give lawyers incentives to run up hours unnecessarily, which can lead to overcompensation.’" Dague, 505 U.S. at 566, 112 S.Ct. 2638 (quoting Report of the Federal Courts Study Committee 104 (Apr. 2, 1990)). , Pague also’ noted that "[i]t is neither necessary nor even possible for application of the fee-shifting statutes to mimic the intricacies of the fee-paying market in every respect." Dague, 505 U.S. at 566-67, 112 S.Ct. 2638.