MORRIS, Judge.
Black Point Assets, Inc. (Black Point), as trustee under the 4551 Remington Road Trust dated March 1, 2013, appeals the final judgment of foreclosure entered in favor of Ventures Trust 2013-I-H-R (Ventures Trust), by MCM Capital Partners, LLC, its trustee. We affirm the portion of the final judgment awarding monies for the outstanding principal, interest, and escrow advances without further comment. However, we reverse the portion of the final judgment awarding attorneys' fees because there was no competent, substantial evidence to support the amount awarded and because the discrepancies between the amount requested, the amount determined to be reasonable, and the amount awarded result in that portion of the final judgment failing to comply with the intent of Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985), and Standard Guaranty Insurance Co. v. Quanstrom, 555 So.2d 828 (Fla. 1990).
I. BACKGROUND
Because we have found error only in the award of attorneys' fees, a complete recitation of the facts is unnecessary. It is sufficient to note that Ventures Trust, a substituted party for the original plaintiff in the foreclosure action, obtained the final judgment against Black Point, a nonparty to the note and mortgage who purchased the subject property after the original property owner's default, but before the filing of the original foreclosure complaint. While the foreclosure case was pending, Ventures Trust filed two affidavits for attorneys' fees, one from an attorneys' fees expert and one from the attorney hired by Ventures Trust. The attorney who represented Ventures Trust sought fees in the amount of $11,710.50.
The record does not reflect that a hearing was held on the issue of attorneys'
*1136 fees, and no expert testimony was presented on that issue at the nonjury trial. It is undisputed that there was no fee agreement between the parties.
At the conclusion of the trial, the trial court entered final judgment in favor of Ventures Trust which included attorneys' fees and costs totaling $12,841.61. That amount was listed in a table of all of the awarded sums of money[1] and was comprised of $7,016.68 for "Attorney Fees & Cost" and $5,824.93 for "Prior Servicer Attorney Fees." The trial court explained that the fee award was "based upon the affidavits presented and upon inquiry of counsel for the Plaintiff." The trial court also summarily concluded that "there [were] no reduction or enhancement factors for consideration by the Court pursuant to" Rowe.
II. ANALYSIS
"Values awarded in a foreclosure judgment must be based on competent, substantial evidence." Boyette v. BAC Home Loans Servicing, LP, 164 So.3d 9, 10 (Fla. 2d DCA 2015) (citing Wagner v. Bank of Am., N.A., 143 So.3d 447, 448 (Fla. 2d DCA 2014) ); see also Colson v. State Farm Bank, F.S.B., 183 So.3d 1038, 1040 (Fla. 2d DCA 2015) (explaining that "a sufficiency of the evidence claim" is reviewed "for competent, substantial evidence"). An attorneys' fees award "must be supported by expert evidence, including the testimony of the attorney who performed the services." Diwakar v. Montecito Palm Beach Condo. Ass'n, 143 So.3d 958, 960 (Fla. 4th DCA 2014) (quoting Tutor Time Merger Corp. v. MeCabe, 763 So.2d 505, 506 (Fla. 4th DCA 2000) ). "Competent evidence includes invoices, records[,] and other information detailing the services provided as well as the testimony from the attorney in support of the fee." Id. (quoting Brewer v. Solovsky, 945 So.2d 610, 611 (Fla. 4th DCA 2006) ).
Here, at trial, the payment history, account ledger, and payoff statement were properly introduced into evidence. However, none of those documents contained competent, substantial evidence to support the $12,841.61 fee award. The payment history consisted of coded data entries with no final totals. The payoff statement reflects that $181,951.91 was the total amount due as of November 17, 2015, and one of the line items was "UNPAID FEES" in the amount of $12,841.61, but there was no description of the services that resulted in the imposition of those fees. The account ledger contains a spreadsheet which reflect numerous charges for "FEE BILLED" in varying amounts that were posted between October 10, 2014, and October 26, 2015. Those amounts, when added together, result in the amount awarded: $12,841.61. But like the payoff statement, there was no description of the services provided that resulted in the imposition of those fees. Another document that was admitted in conjunction with the account ledger reflected a table entitled "BSI Fee Breakdown" with a total of $7,016.68, along with another table entitled "Prior Servicer Fee Breakdown" with a total of $5,824.93. Like the other documents, there was no description of the services provided that resulted in the imposition of those fees. Nor was there any testimony explaining these documents or the figures in them. Specifically, there was no testimony "regarding the identity of the timekeeper, the hours worked, or the work performed." Diwakar, 143 So.3d at 961 ; see also Boyette, 164 So.3d at 10 (reversing attorneys' fees award where the record did not reflect any agreement to a flat attorneys' fee and where there was no *1137 other competent, substantial evidence to support the fee award).
We note that the trial court made a finding that "38.70 hours were reasonably expended by Plaintiff's counsel and that an[ ] hourly rate of $215.00 is appropriate." This finding appears to emanate from the attorneys' fees affidavits filed prior to trial. The attorney who billed Ventures Trust stated he had completed 38.70 hours of work at the rate of $215 per hour. The attorney also stated that in addition to the hourly work, Ventures Trust had agreed to pay a flat fee of $3390. Thus the attorney was seeking a total award of $11,710.50 ($8320.50 for the hourly rate plus $3390 for the flat fee), an amount that the attorneys' fees expert opined was a reasonable fee.[2] However, the trial court did not address the $3390 flat fee that was requested in the attorneys' fees affidavit, and thus it is unknown whether that amount was included in the $12,841.61 award. The portion of the final judgment awarding attorneys' fees simply fails to address the discrepancy between the requested amount and the amount awarded. And the order itself is internally inconsistent because the amount awarded is more than the amount that the trial court found was reasonable ($8320.50 based on 38.70 hours at a rate of $215 per hour). Furthermore, the attorneys' fees affidavits were never offered as an exhibit at the trial.
Black Point contends that a reversal of the fee award without remand is the proper remedy because Ventures Trust failed to present any evidence in support of the fee award. However, the transcript of the trial reflects that Black Point's trial counsel challenged the amount of the requested fees and suggested that the fee issue "might require a hearing."[3] And because the record contains some evidence which, if explained, could support the award, reversing and remanding for an evidentiary hearing is the more appropriate disposition. See Colson, 183 So.3d at 1041 ("Remand for 'an evidentiary hearing on the amount of attorney's fees and costs sought by the bank' is necessary and proper where the only evidence of the fees and costs 'was an affidavit filed by the bank's counsel prior to trial.' " (quoting Wagner, 143 So.3d at 448 ) ); Diwakar, 143 So.3d at 961 (explaining that "when the record contains some competent[,] substantial evidence supporting the" award of fees, "yet fails to include some essential evidentiary support such as testimony from the attorney performing the services, or testimony from additional expert witnesses, the appellate court will reverse and remand the order for additional findings or an additional *1138 hearing, if necessary" (quoting Rodriguez v. Campbell, 720 So.2d 266, 268 (Fla. 4th DCA 1998) ) ); see also Boyette, 164 So.3d at 11 (reversing and remanding "for further proceedings to properly establish the amounts due and owing"); Petrovsky v. HSBC Bank, USA, 185 So.3d 700, 702 (Fla. 4th DCA 2016) (concluding that attorneys' fees affidavits that were filed prior to trial were insufficient to support fee award and thus reversing attorneys' fees award and remanding for trial court to conduct evidentiary hearing). Consequently, we reverse and remand for the trial court to conduct an evidentiary hearing to determine the proper amount of attorneys' fees.
Because we are reversing the portion of the final judgment awarding attorneys' fees and remanding for an evidentiary hearing, we write to address one other issue briefly raised by Black Point. Although it appears that the trial court attempted to comply with Rowe by finding that 38.70 hours were reasonably expended and that $215 per hour was a reasonable rate, the internal inconsistencies within the order as well as the discrepancy between the amount requested and the amount awarded preclude us from engaging in meaningful appellate review.
Rowe dictates that courts must multiply the number of hours reasonably expended by a reasonable hourly rate to reach the lodestar amount. 472 So.2d at 1150-51. The trial court may then add or subtract from that amount "based upon a 'contingency risk' factor and the 'results obtained.' " Id. at 1151. "In determining the hourly rate, the number of hours reasonably expended, and the appropriateness of the reduction or enhancement factors, the trial court must set forth specific findings." Id."If the court decides to adjust the lodestar, it must state the grounds on which it justifies the enhancement or reduction." Id.; see also Quanstrom, 555 So.2d at 834 (setting forth factors that trial courts should consider when deciding whether to apply a multiplier and explaining that "[e]vidence of these factors must be presented to justify the utilization of a multiplier").
Here, the amount requested was $11,710.50, the amount that the trial court determined was reasonable was $8,320.50 (38.70 hours at $215 per hour), and the amount that the trial court awarded was $12,841.61. Although some of the documents submitted into evidence reflect the $12,841.61 award amount, there was no testimony to provide context to that amount as we previously explained. Further, because the amount awarded exceeded both the amount determined to be reasonable and the amount requested, one interpretation is that the trial court intended to award more than the lodestar amount, though we acknowledge that that is unlikely due to the trial court's finding that "there are no reduction or enhancement factors for consideration by the Court pursuant to" Rowe. However, because the amount awarded exceeded both the amount determined to be reasonable and the amount requested, we do not know what led to the trial court's decision to award the amount that it did. The internal inconsistency in the order as well as the discrepancy between the amount requested and the amount awarded make it impossible for us to determine the basis for the trial court's award. Cf. In re Guardianship of Ansley, 94 So.3d 711, 713-14 (Fla. 2d DCA 2012) (concluding that where the amount of fees awarded was less than the amount requested and less than the amount determined to be reasonable, the internal inconsistency in the order resulted in a lack of meaningful findings pursuant to Rowe and precluded the court from determining the basis for the court's *1139 award, including whether it was supported by competent, substantial evidence). Thus, on remand, if the trial court again decides to award attorneys' fees, the order should set forth the basis for the award in a manner that is consistent with the intent of Rowe and Quanstrom.
Affirmed in part, reversed in part, and remanded for proceedings in conformance herewith.
CASANUEVA and SALARIO, JJ., Concur.

The table also listed amounts for the principal, interest, and escrow advances.

The attorneys' fees expert opined in his affidavit that 38.70 hours was reasonable for this type of litigation and that 36.40 hours at a rate of $215 per hour plus a flat fee of $3390 resulted in "a total reasonable fee of $11,710.50." The reference to 36.40 hours appears to be a typographical error as it is clear from the totality of the affidavit that the expert believed the hourly rate should be based on 38.70 hours of work.

Although not raised by Black Point as an independent basis for reversal, we note that " '[r]easonable attorney's fees' generally are not liquidated damages and require a hearing." Zumpf v. Countrywide Home Loans, Inc., 43 So.3d 764, 766 (Fla. 2d DCA 2010) (quoting Asian Imps., Inc. v. Pepe, 633 So.2d 551, 552 (Fla. 1st DCA 1994) ). "Absent an evidentiary hearing, the fee award will be reversed for a hearing unless there is an indication that the right to a hearing was waived." Id. (citing Guyton v. Leonard Dewey Wilkinson Action Welding Supply, Inc., 707 So.2d 885, 886 (Fla. 1st DCA 1998) ). There is no indication that Black Point's counsel waived the right to a fee hearing. Rather, after making his suggestion about the need for a hearing, he resumed making arguments about Ventures Trust's standing. The hearing ended with the trial court granting final judgment in favor of Ventures Trust. Thus counsel did not have a further opportunity to move for a separate fee hearing.