DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**BANKERS LIFE AND CASUALTY COMPANY,**
Appellant,

v.

**BENJAMIN BOREW,** et al.,
Appellees.

No. 4D2024-1296

[March 4, 2026]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, Martin County; Nancy F. Alley, Judge; L.T. Case No. 17000971CAAXMX.

Matthew J. Conigliaro of Carlton Fields, P.A., Tampa, for appellant.

Kara Rockenbach Link of Link & Rockenbach, PA, West Palm Beach, for appellees.

KUNTZ, C.J.

Bankers Life and Casualty Company appeals the circuit court's order awarding attorney's fees to Benjamin Borew and Rose Ann Borew Talbot, as personal representative of the Estate of Josephine Borew. The circuit court awarded Benjamin and Josephine's attorney's fees of $1,257,243.75 and $1,311,634.38, respectively, for a combined total of $2,568,878.13. Bankers Life raises two issues on appeal. First, Bankers Life argues the Borews failed to present evidence justifying the imposition of a multiplier. Second, Bankers Life argues the circuit court erred when it awarded an hourly rate that exceeded the rate the attorney and client agreed was reasonable. We agree on both issues and reverse.

### i.    *Background*

The Borews contracted with Bankers Life for long-term care benefits. Under the insurance policy, they became eligible for up to $1,470 weekly in unlimited long-term care benefits for home-based attendant care. Years later, Bankers Life suddenly stopped paying the Borews, accusing them of fraudulent billing. Banker's Life filed a complaint seeking over $700,000 from the Borews for fraud, unjust enrichment, and a declaratory action.

The Borews retained David Stone, P.A., to represent them in the defense and counterclaim of the lawsuit. They also signed a similarly worded retainer agreement with Michael Rosen, P.A. to represent Ms. Borew because Attorney Stone believed a conflict prevented him from representing both parties. Attorney Stone's retainer agreement included the following language:

**Attorney's Fees**
As compensation for professional services, Clients agree to pay the Firm for legal services at $450.00 per hour for attorney rates and $100.00 per hour for paralegal rates. Clients agree that these rates are fair and reasonable. . . .

**Contingency Retainer for Legal Services**
Clients have advised the Firm that they are unable to pay the Firm for legal fees associated with this litigation. Accordingly, the Firm hereby agrees to represent Clients on a contingency basis. The Firm agrees to accept Court awarded Attorney's Fees as its sole compensation if Clients prevail in this litigation. The Firm agrees not to charge Clients for legal services if Clients do not prevail in this litigation.

After a seven-day trial, the jury found for the Borews. Banker's Life was not awarded any damages. The jury awarded Mr. Borew $455,857 for past damages and $229,320 for the present value of future damages. Ms. Borew was awarded $240,786.

Bankers Life stipulated to the Borews' entitlement to attorney's fees, and the circuit court held an evidentiary hearing to determine the amount of fees to award.

Attorney Stone testified that his typical hourly rate was $650 per hour, but he agreed to work for the Borews at a reduced hourly rate. He explained that the case was risky because Bankers Life had conducted surveillance on the Borews. Attorney Stone testified that the surveillance videos showed the Borews walking and getting in and out of their vehicle. Mr. Borew was shown standing, pumping gas, and riding an ATV on his property. Similarly, Attorney Rosen testified that Bankers Life took fraud allegations very seriously.

The Borews' attorney's fee expert witness described his own extensive professional history, including his board certifications in civil trial law and

business litigation.  The expert testified that Attorney Rosen's hourly rate was reasonable.  He also testified:

> At the outset of the representation of this case, it is clear to me that an assessment of the risks involved would have led to a conclusion that it was less likely than not that the Borews would have prevailed in this case.  Based upon the information available at that time, any experienced litigator would have considered that it was less likely than not, in taking on this litigation, that your clients would prevail and that, therefore, you would be unable to recover a fee.

Considering the attorneys' experience, the case's complexity, and the likelihood of losing, the expert also testified that he believed a contingency fee multiplier of 2.5 was appropriate.

The circuit court arrived at a $525 hourly rate for Attorney Stone and Attorney Rosen, with a contingency fee multiplier of 2.5.  Based on that decision, the circuit court awarded attorney's fees of $1,257,243.75 and $1,311,634.38, respectively, for a combined total of $2,568,878.13

### ii.    Analysis

### a.    The Circuit Court Erred in Awarding a Contingency Fee Multiplier

We first address Bankers Life's argument that the circuit court erred using a contingency fee multiplier, because the Borews failed to present evidence justifying a multiplier's application.  An order applying a multiplier to an award of attorney's fees is reviewed for an abuse of discretion.  *Nationstar Mortg. LLC v. Faramarz*, 331 So. 3d 738, 744 (Fla. 4th DCA 2021).

The Florida Supreme Court adopted the federal lodestar method for determining court-awarded fees.  *Fla. Patient's Comp. Fund v. Rowe*, 472 So. 2d 1145, 1146 (Fla. 1985), *holding modified* by *Standard Guar. Ins. v. Quanstrom*, 555 So. 2d 828 (Fla. 1990).  "[C]ourts must multiply the number of hours reasonably expended by a reasonable hourly rate to reach the lodestar amount."  *Black Point Assets, Inc. v. Ventures Tr. 2013-I-H-R by MCM Cap. Partners, LLC*, 236 So. 3d 1134, 1138 (Fla. 2d DCA 2018).  The court can then adjust the lodestar amount based on a contingency risk factor.  *Joyce v. Federated Nat'l Ins.*, 228 So. 3d 1122, 1124 (Fla. 2017).

But "the application of a [contingency] multiplier is not mandatory when the prevailing party's counsel is employed on a contingency fee basis." *Askowitz v. Susan Feuer Interior Design, Inc.*, 563 So. 2d 752, 754 (Fla. 3d DCA 1990). When deciding whether a contingency fee multiplier is appropriate, a court asks:

> (1) whether the relevant market requires a contingency fee multiplier to obtain competent counsel; (2) whether the attorney was able to mitigate the risk of nonpayment in any way; and (3) whether any of the factors set forth in *Rowe* are applicable, especially, the amount involved, the results obtained, and the type of fee arrangement between the attorney and his client.

*Sumner Grp., Inc. v. M.C. Distributec, Inc.*, 949 So. 2d 1205, 1207 (Fla. 4th DCA 2007) (quoting *Quanstrom*, 555 So. 2d at 834). "Importantly, 'evidence of each of these factors must be presented to justify the utilization of a multiplier.'" *Certain Underwriters at Lloyd's London v. Candelaria*, 339 So. 3d 463, 470 (Fla. 3d DCA 2022) (quoting *Quanstrom*, 555 So. 2d at 834).

Further, "[i]f there is no evidence that the relevant market required a contingency fee multiplier to obtain competent counsel, then a multiplier should not be awarded." *Universal Prop. & Cas. Ins. v. Deshpande*, 314 So. 3d 416, 421 (Fla. 3d DCA 2020) (quoting *USAA Cas. Ins. v. Prime Care Chiropractic Enters., P.A.*, 93 So. 3d 345, 347 (Fla. 2d DCA 2012)). "The purpose of the relevant market factor is 'to assess, not just whether there are attorneys in any given area, but specifically whether there are attorneys in the relevant market who both have the skills to handle the case effectively and who would have taken the case absent the availability of a contingency fee multiplier.'" *Impex Caribe Corp. v. Levin*, 338 So. 3d 13, 15 (Fla. 3d DCA 2022) (quoting *Joyce*, 228 So. 3d at 1135).

So, to award the multiplier, the record evidence must show "that without risk-enhancement[,] plaintiff would have faced substantial difficulties in finding counsel in the local or other relevant market." *Sun Bank of Ocala v. Ford*, 564 So. 2d 1078, 1079 (Fla. 1990) (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 731 (1987)).

One, but not both, of the attorneys testified that he understood the Borews had trouble finding counsel. But the attorney did not describe those difficulties. The Borews' expert testified that it was likely Bankers Life would prevail. He testified that the hourly rate was reasonable. He

added that the hours expended were reasonable. He did not testify that the Borews would not have obtained counsel absent the availability of a risk multiplier. No one did, and "[a]warding a contingency fee multiplier in the absence of testimony regarding the relevant market is error." *Deutsche Bank Nat'l Tr. Co. as Tr. for Morgan Stanley Home Equity Loan Tr. 2007-1 v. Pereira*, 352 So. 3d 3, 4 (Fla. 4th DCA 2022). So, we reverse the circuit court's order awarding a contingency fee multiplier.

### b.     The Circuit Court Erred in Awarding An Hourly Rate in Excess of the Contractually-Agreed Amount

Next, Bankers Life argues the circuit court awarded an hourly rate in excess of what the Borews agreed was reasonable. As noted above, "[c]ourts must multiply the number of hours reasonably expended by a reasonable hourly rate to reach the lodestar amount." *Black Point Assets, Inc.*, 236 So. 3d at 1138.

"Fee agreements between attorneys and clients are governed by the law of contracts." *Moore v. State Farm Mut. Auto. Ins.*, 916 So. 2d 871, 875 (Fla. 2d DCA 2005).

The Florida Supreme Court effectively "established a cap on . . . [attorney's] fee[s] by holding that in no case should the court-awarded fee exceed the fee agreement reached by the attorney and [the] client." *Quanstrom*, 555 So. 2d at 831 (citation modified). We have explained that "a fee award cannot exceed the actual fee agreement or the amount for which the client is in fact responsible." *Nelson v. Marine Grp. of Palm Beach, Inc.*, 677 So. 2d 998, 1000 (Fla. 4th DCA 1996). This cap on fees applies to both contingency and hourly fee agreements. *First Baptist Church of Cape Coral, Fla., Inc. v. Compass Const., Inc.*, 115 So. 3d 978, 981 (Fla. 2013).

In response to this cap, attorneys began including "alternative fee recovery clauses" in their retainer agreements. *Id.* The alternative fee recovery clause allowed the attorney to receive the greater amount of "(i) a specified fee if the fee is paid by the client, or (ii) a court-awarded reasonable fee if the fee is paid by a third-party pursuant to a fee-shifting provision." *Id.*; *see also Miami Child.'s Hosp. v. Tamayo*, 529 So. 2d 667, 667–68 (Fla. 1988) (upholding a similar fee agreement that provided for the greater of a contingency fee or court-awarded reasonable fees).

The fee agreements between the Borews and their counsel expressly set the attorneys' hourly rate at $450 and the paralegals' hourly rate at $100. The agreements did not contain alternative fee recovery clauses. Of

course, the Borews insist such clauses existed. We agree with them that the alternative fee recovery clause need not use specific words, but it must indicate that the parties anticipate a fee award exceeding the agreed upon amount. In this case, the agreements did not do so. As a result, we reverse the circuit court's order and remand for entry of an award that is consistent with the contractually-agreed fee amount.

### *iii.   Conclusion*

We reverse the circuit court's fee award and remand for entry of an award that does not include a contingency fee multiplier and is limited to the hourly rates stated in the fee agreements that the Borews signed.

*Reversed and remanded.*

CIKLIN and KLINGENSMITH, JJ., concur.

\*        \*        \*

**Not final until disposition of timely-filed motion for rehearing.**